Williams, J.
 

 Section 7 of Article XVIII of the Ohio Constitution provides: “Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3
 
 *608
 
 of this article, exercise thereunder all powers of local self-government. ’ ’
 

 Columbus is a home-rule city under this constitutional provision and has adopted charter provisions relating to the public library as follows:
 

 “Sec. 130. Trustees; appointment and organization. The erection and -equipment, and the custody, control and administration of free public libraries, branches and stations thereof, established by or belonging to the city, shall be vested in six trustees, not more than three of whom shall belong to the same political party. Such trustees shall be appointed by the mayor, to serve without compensation, for a term of four years and until their successors are appointed and qualified. Members of the board as now constituted by law, serving at the time this charter takes effect, shall continue as such for the terms for which they were appointed, and thereafter as the respective terms of. the trustees expire their successors shall be appointed for terms of four years. Said trustees shall organize as a board of library trustees and shall elect a president, vice president, treasurer, and secretary. The librarian may serve also as secretary. Pour trustees shall constitute a quorum, and four votes shall be necessary to pass any measure or to authorize any act, which votes shall be taken by the yeas and nays and entered on the record of their proceedings. In the making of contracts the trustees shall be governed by the provisions of this charter applicable thereto.
 

 “Sec. 131. Powers and duties of trustees. The board of library trustees shall establish, maintain and regulate the public library and branches and stations thereof, and may receive donations and bequests of money or property therefor, in trust or otherwise. The board of library trustees, by its treasurer, shall be the custodian of all trust funds now held by it, or which may hereafter be received by gift, devise, in trust, or otherwise for the public library of Columbus, Ohio,
 
 *609
 
 and of all other funds acquired for or by reason of the operation and extension of the public library system except funds appropriated by council for library purposes. Said treasurer and his successor in office shall carefully preserve, control, and invest the said trust funds as required by the deeds of trust, and shall disburse the income of the same as they shall be directed by the board of library trustees in accordance with and subject to the terms and conditions of said deeds of trust. Disbursements from all other funds in the custody of said treasurer shall be made only as the board of library trustees shall direct. Said treasurer shall execute to the board of library trustees, for the use and benefit of said city, a good and sufficient bond in such amount and with such surety or sureties as the said trustees may require, conditioned for the faithful performance of his duties as the custodian of said funds, and the premium, if any, shall be paid from the library funds.
 

 “The board of library trustees shall appoint the librarians and necessary assistants and employes, fix for their compensation, adopt the necessary by-laws and regulations for the protection and government of the libraries, branches and stations thereof, and all property belonging thereto, and shall exercise all the powers and duties connected with and incident to the government, operation and maintenance thereof, in-' eluding the purchase of books, periodicals, stationery, maps, and like requirements.
 

 “Said board of library trustees shall establish and maintain a merit-service system for the appointment, assignment, and government of the librarians and assistants and employes. The president and one other member of the board of library trustees, selected by it, together with the librarian, shall constitute an examining board for the examination of librarians and assistants and employes in and for the library service of the said free public library, its branches and sta
 
 *610
 
 tions, and may issue certificates valid for not less than one year, to such persons as are found to possess the requisite attainments, and such certificates shall be renewable by the said examining board. The certificates provided for in this section shall be signed by the said examiners and shall obviate the necessity of any and all other examinations for library service, of the persons holding them, by any board of examiners.
 

 “Sec. 132. The board of library trustees shall report annually to the council covering the operation of the public library including detailed statements of the receipts and disbursements of the funds in its custody.
 

 “No other provisions of this charter shall be held to impair or restrict the powers and duties of the board of library trustees as specified herein or as now provided by general law. ’ ’
 

 The board of trustees of the Columbus Public Library has taken steps to extend library service to all the inhabitants of the county (excepting to the inhabitants of subdivisions maintaining a public library participating in the proceeds of classified property taxes), and in return participate in the proceeds of the classified property taxes collected in the county, all of which is done under the provisions of Sections 2692 and 5625-20, General Code, from which we quote material parts as follows:
 

 “Upon request in like form of any board of public library trustees or board of township park commissioners for which a share of the undivided classified property taxes collected in the county has been allowed and fixed by the budget commission, the auditor may, prior to the first day of April in any year, draw, and the treasurer shall pay to the treasurer of such board from any undivided tax funds in the county treasury an amount not exceeding twenty-five per centum of the board’s share of such undivided classified property taxes; but the auditor and treasurer shall retain an amount sufficient to meet all other re
 
 *611
 
 quests for payments which, have been made under this section or can be reasonably anticipated prior to such first day of April.” (Section 2692, General Code.)
 

 “The board of trustees of any public library, desiring to participate in the proceeds of classified property taxes collected in the county, shall adopt appropriate rules and regulations extending the benefits of the library service of such library to all the inhabitants of the county (excepting to the inhabitants of the subdivisions maintaining a public library participating in the proceeds of classified' property taxes) on equal terms, unless such library service is by law available to all such inhabitants, and shall certify a copy of such rules and regulations to the taxing authority with its estimate of contemplated revenue and expenditures.” (Section 5625-20, General Code.)
 

 It is conceded that the sole question presented is whether these statutes have application to a city with a home-rule charter, containing the above provisions regarding a free public library.
 

 Under the foregoing constitutional provision a home-rule city may exercise the powers of local self-government, subject to Section 3 of Article XVIII of the Constitution. Section 3 reads as follows: “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary- and other similar regulations as are not in conflict with general laws.”
 

 In considering and interpreting the home-rule provision it should be borne in mind that Section 3 confers authority on municipalities generally to exercise all powers of local self-government. Subject to such powers, the arm of the state through its Legislature extends into every municipality including those having home-rule charters. From
 
 Billings
 
 v.
 
 Cleveland Ry. Co.,
 
 92 Ohio St., 478, at page 484, 111 N. E., 155, we quote: “It must not be overlooked that the municipal
 
 *612
 
 government, as well after a charter has been adopted as before, is an arm or agency — a part — of the state. Every instrumentality established by a city or village under a home-rule charter, adopted in accordance with the constitution, rests upon the grant of the state itself, which has delegated to the municipality the capacity to exercise the power. The state has given its sanction to a charter or plan of local self-government when thus adopted. There is no
 
 imperium in imperio,
 
 except in the sense that by the approval of the state the city exercises part of the sovereign power under the limitations imposed, and may thereby, subject to such limitations, exercise all powers of local self-government. This involves no lack of the harmony that is essential and no loss by the state of its proper authority over the city and its people. The charter becomes the organic law of the municipality so far as such local powers are concerned. But the authority of the state is supreme over the municipality and its citizens as to every matter and every relationship not embraced within the field of local self-government.”
 

 In
 
 Niehaus, Bldg. Insp.,
 
 v.
 
 State, ex rel. Bd. of Edn. of City of Dayton,
 
 111 Ohio St., 47, 144 N. E., 433, it is asserted that the status of a municipality is not changed by the adoption of Section 3, Article XVIII, Ohio Constitution, from what it was before its adoption; and with reference to charter cities, the opinion contains the following on page 53:
 

 ‘ ‘ The only feature of the sovereign power which is surrendered by the so-called ‘home rule’ provision of the Constitution is that which relates solely to local government. Neither the municipality nor its officers are relieved of any obligation which other political subdivisions and other officers owe to the state, except in the matter of local self-government, and such municipalities and their officers are still agencies of the state, acting in behalf of that portion of the state in which they have jurisdiction. While within its own
 
 *613
 
 boundaries, within the limits of the grant, it executes the functions and possesses the attributes of sovereignty, and to that extent as against its citizens and all persons within its jurisdiction has the rights and immunities of the sovereign, yet as against the sovereign it is but an agent whose powers may be withdrawn at the will of the sovereign that granted them. Hence, the power to exercise sovereignty in local self-government, and local police power not in conflict with general law, does not confer upon municipalities the power to enact and enforce legislation which will obstruct or hamper the sovereign in the exercise of a sovereignty not granted away.
 

 ‘
 
 ‘ The matter of providing the means of education is by the Constitution expressly imposed upon the General Assembly of the state.”
 

 The opinion then refers to Section 7, Article I of the Ohio Constitution, which provides in part: “It shall be the duty of the General Assembly to pass suitable laws * # * to encourage schools and the means of instruction.”
 

 Certainly today free public libraries are fountains of knowledge and among the most fruitful “means of instruction” that exist and are but a counterpart of the public school system in promoting education.
 

 In
 
 Brown et al., Commrs.,
 
 v.
 
 State, ex rel. Merland, a Taxpayer,
 
 120 Ohio St., 297, 302, 166 N. E., 214, the following appears: “Public libraries are a part of the educational facilities of the state, and, while not so generally employed or so readily accessible as schools, if they constitute a proper element of governmental activity they must be as applicable to every community as to any one community. Knowledge is neither more nor less necessary or expedient in the populous centers than in the sparsely settled rural counties. The earliest legislation on this subject treated libraries as a part of the common school system.”
 

 It is apparent that a query arises as to whether a
 
 *614
 
 home-rule city can, by express provision of its charter, deprive the law-making body of the state of all power to provide for the dissemination of reading matter of educational value by a free public library established and maintained by the municipality within its limits and governed by a board of trustees under the provisions of the city charter. However that may be, the charter involved herein contains no such provision and therefore we deem it unnecessary to pursue this line of inquiry further.
 

 It is a matter of common knowledge that there are many people living in Ohio outside of municipalities who will be deprived of the educational advantages of library service if libraries in adjacent villages or cities are not available to them. There seems to be no good reason why a free public library should not be accessible, within a convenient radius, to all inhabitants who lack library facilities whether resident in a municipality or in the rural area outside its limits. The Legislature has acted on this theory and has provided that the service may be rendered in the discretion of the board of trustees of the library on the one hand and paid for through taxation on the other. There is absolutely no language in the city charter prohibitive of or inconsistent with these statutory provisions. While the city charter involved is supreme in matters of local self-government, the state is still supreme in all other matters including police, sanitary and other similar regulations.
 

 It is true that provision is made in the city charter for the establishment and administration of free public libraries and branches, and for the appointment of trustees by the mayor to govern them. But it is also true that provision is made therein for the operation and extension' of the system by action of the board of trustees without placing any limitation on the extension. It is further provided in Section 132 that the charter shall not restrict the powers of the trustees
 
 *615
 
 “as now provided by general law.” Tbe implication necessarily arises that the powers of the trustees were to be regulated to some extent by state law.
 

 The assertion is also borne out by the following additional charter provisions: “Sec. 1. It [the city of Columbus] shall have all powers that now are, or hereafter may be granted to municipalities by the Constitution or laws of Ohio * * *. In the absence of such provision as to any power, such power shall be exercised in the manner now or hereafter prescribed by the general laws of the state applicable to municipalities.”
 

 Section 2 of the charter provides: “The enumeration of particular powers by this charter shall not be held or deemed to be exclusive, but in addition to the powers enumerated herein, implied thereby or appropriate to the exercise thereof the city shall have, and may exercise all other powers which, under the Constitution and laws of Ohio, it would be competent for this charter specifically to enumerate.”
 

 Section 232 of the charter says: “All general laws of the state applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this charter, or with ordinances or resolutions hereafter enacted by the city council, shall be applicable to this city; provided, however, that nothing contained in this charter shall be construed as limiting the power of the city council to enact any ordinance or resolution not in conflict with the Constitution of the state or with the express provisions of this charter.”
 

 These parts of the charter have not been pleaded in the answer but only commented on in the briefs and in oral argument; and, strictly speaking, we cannot consider them in passing on the demurrer to the answer. Duty compels us to call attention to them because of the evident bearing upon the matter under discussion.
 

 These various provisions of the charter, viewed in
 
 *616
 
 their totality, vest in the board of library trustees power of control over the library and its branches and over all funds including those “acquired for or by reason of the operation and extension of the library system” (Section 131 of the charter), except funds appropriated by the city, and give permission to such board to receive donations of money in trust or otherwise.
 

 There is no doubt about the power of the Legislature to extend to municipalities regulatory authority over their environs when reasonably necessary.
 
 Prudential Co-op. Realty Co.
 
 v.
 
 City of Youngstown,
 
 118 Ohio St., 204, 160 N. E., 695. By parity of reasoning provision can be made by statute allowing a library within a city to receive an allowance from the proceeds of taxes collected in return for library service beyond the corporate limits.
 

 The statutes under interpretation give the board, on complying with the prescribed terms, the right to participate in the proceeds of classified property taxes in extending the educational opportunities afforded by the public library to people residing in its environs who would otherwise be without such facilities. The board, having acted upon the matter under its authority to manage and control the carrying of the library granted by the charter with no specific limitation or restriction, is entitled to participate in and receive its lawful share of the classified property taxes in return for extension of library service.
 

 As the matter affirmatively pleaded in the answer does not state a defense, the demurrer thereto will be sustained. The demurrer searches the record and raises the question of the sufficiency of the petition. This court finds that that pleading states facts sufficient to constitute a cause of action. Inasmuch as counsel in open court agreed that this cause should be determined upon the demurrer and without regard to
 
 *617
 
 the general denial, the writ of mandamus will be allowed.
 

 Writ
 
 allowed.
 

 Weygandt, C. J., Day and Zimmerman, JJ., concur.