Williams, J.
 

 These three causes present the same question. The city of Cincinnati, having in 1902 established a firemen’s pension fund and police relief fund under statutory provisions which are now, in amended form, Sections 4600 and 4616, General Code, respectively, has contended that it has the right under the present provisions of the Constitution, relating to municipalities, to establish its own retirement system for firemen and policemen. Acting accordingly by ordinance passed in 1931, the city established a general retirement system, including therein provisions for retirement allowances, pension and death benefits for firemen and policemen entering the city service since August 1,1931. The then existing system established under state law was allowed to remain in effect but only as to firemen and policemen who had entered the city service on or before that date.
 

 Broadly stated, the sole question is: May a municipality establish its own system of retirement for firemen and policem en' contrary to state statutes governing the same subject?
 

 One of the chief aims of municipal government has always been the exercise of those local governmental powers which are peculiar to the municipality. According to the great weight of authority municipal powers of local self-government, in the absence of constitutional provisions, are not beyond the control of the legislative branch of state government. 1 Dillon on Municipal Corporations (5 Ed.), 140, Section 90. The power of the municipality to act, however, is not confined solely to matters of local interest and importance. In addition, the state is wont to impose upon the municipal subdivision certain duties with respect to matters of general concern to the entire
 
 *227
 
 state. Thus the municipality acts in a dual capacity. On the one hand the town or city acts for itself; on the other, for the state. For authorities see treatise by Juan I). Miranda, 43 Corpus Juris, Municipal Corporations, Sections 4, 5, 6 and 178.
 

 In Ohio there are constitutional provisions regulating municipal power. These are found in Article XVIII, and all of them were adopted September 3, 1912. Being
 
 in pari materia
 
 they must be construed together. Such powers as are enumerated therein can not of course be taken away by the Legislature. These controlling provisions confer upon the municipalities “authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.” However, the General Assembly may limit the power of municipalities to levy taxes and incur debts for local purposes. Section 13, Article XVIII. In addition Section 7 gives to any municipality power to “frame and adopt or amend a charter for its government.” The constitutional powers of a non-charter city are exactly the same as those of a charter city. The only difference between the two is that one operates under charter and the other does not. Obviously a municipality has no right or authority to put into its charter or to enact by ordinance any local regulation, police, sanitary or other, that conflicts with the general laws of the state or interferes in any way with the exercise of governmental power by the state in matters of state-wide concern. In other words, the dual capacity of the municipality continues notwithstanding such constitutional provisions. As to one function, a city or village exercises the powers of local self-government within imposed limitations and, as to the other, acts as an arm or agency of the sovereign state.
 

 This duality is established doctrine in this jurisdiction. No authority need be cited on the proposition
 
 *228
 
 of municipal power in matters of local concern for the Constitution itself is ample in that behalf. As to the other power — the power of the municipality in acting as an instrumentality of the state — it was stated in
 
 Billings
 
 v.
 
 Cleveland Ry. Co.,
 
 92 Ohio St., 478, at 484, 111 N. E., 155, decided in 1915: “It must not be overlooked that the municipal government, as well after a charter has been adopted as before, is an arm or agency — a part — of the state. * * * The charter [in a charter city] becomes the organic law of the municipality so far as such local powers are concerned. But the authority of the state is supreme over the municipality and its citizens as to every matter and every relationship not embraced within the field of local self-government. ’ ’ See, also,
 
 Niehaus, Bldg. Inspector,
 
 v.
 
 State, ex rel. Bd. of Edn.,
 
 111 Ohio St., 47, 144 N. E., 433;
 
 State, ex rel. Ellis, City Solicitor,
 
 v.
 
 Blakemore, Clerk,
 
 116 Ohio St., 650, at 659, 157 N. E., 330;
 
 State, ex rel. Ramey,
 
 v.
 
 Davis et al., County Commrs.,
 
 119 Ohio St., 596, 165 N. E., 298;
 
 State, ex rel. Brickell,
 
 v.
 
 Frank, County Treas.,
 
 129 Ohio St., 604, 196 N. E., 416.
 

 It is apparent from an examination of these authorities that the municipality may not take action by charter or ordinance contrary to statute in matters of state-wide concern for these remain essentially the prerogatives of state sovereignty.
 

 The next query relates especially to police and fire protection, as objects of state concern. Although there is a contrariety of opinion on the proposition, the weight of authority apparently supports the view that both fire and police matters are subject to state control even as to charter cities whose powers of local self-government are derived from constitutional provisions.
 
 Van Gilder, Admx.,
 
 v.
 
 City of Madison,
 
 222 Wis., 58, 267 N. W., 25, 105 A. L. R., 244;
 
 Luhrs
 
 v.
 
 City of Phoenix,
 
 52 Ariz., 438, 83 P. (2d), 283;
 
 State, ex rel. Jost,
 
 v.
 
 Reynolds,
 
 265 Mo., 51, 175 S. W., 591.
 

 There is, however, no necessity to look to decisions
 
 *229
 
 in other states for the question is no longer an open one in Ohio. In the case of
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, at 284, 156 N. E., 210, 52 A. L. R., 518, this language was used: “In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself.”
 

 In
 
 Thompson
 
 v.
 
 City of Marion,
 
 134 Ohio St., 122, 16 N. E. (2d), 208, this court had under consideration the same sections that are involved in the case at bar, namely, Sections 4600 and 4616, General Code. It was there held that these sections govern the establishment, maintenance and administration of the relief and pension funds for city firemen and police respectively. The city of Marion adopted ordinances by which funds were created in pursuance of the sections of the statutes referred to, and thereupon an injunction to prevent the abandonment of the system of the police and firemen pensions, and particularly the use of the pension funds for other purposes, was sustained.
 

 In the instant case it appears that the city of Cincinnati, at least in part, has actually done what this court has held the city of Marion could not do. The city of Cincinnati has abandoned in a measure the system adopted under state law in that it has provided by ordinance that policemen and firemen entering service after a specified date be included in the city’s retirement system and excluded from the system existing under state law. Such course is contrary to the ruling in the
 
 Marion case.
 

 
 *230
 
 This court, in keeping with its prior decisions, has recently held that the state by legislative enactment may validly withdraw from cities health powers previously granted and transfer them to newly created health districts. By this process they become health agencies of the state government and their employees are governed by state law, even with respect to the classified civil service.
 
 State, ex rel. Mowrer,
 
 v.
 
 Underwood,
 
 137 Ohio St., 1, 27 N. E. (2d), 773. Moreover this day it has been held that the fire department of a city is a matter of state-wide concern; that the Legislature has power to establish the platoon system in city fire departments; and that such action is not violative of the principle of local self-government.
 
 State, ex rel. Strain, Dir.,
 
 v.
 
 Houston, ante,
 
 203.
 

 There is no hesitation in stating that in this jurisdiction police, fire and health protection are within the sovereign power of the state and with respect thereto, municipalities, whether governed by charter or not, are arms or agencies of state sovereignty. It has been asserted, however, that all has been changed by Section 2, Article XVIII of the Ohio Constitution, adopted September 3, 1912, which reads: ‘ ‘ General laws shall be passed to provide for the incorporation and government of cities and villages; and additional laws may also be passed for the government of municipalities adopting the same; but no such additional law shall become operative in any municipality until it shall have been submitted to the electors thereof, and affirmed by a majority of those voting thereon, under regulations to be established by law.”
 

 This section does not take from Sections 3 and 7 of the same Article a jot or tittle of their meaning. Section 2 simply means that general laws may be passed for the incorporation and government of municipalities, but does not alter powers specifically granted to them by organic law. The “additional laws” referred to are those which may be enacted by the Legislature
 
 *231
 
 to provide plans for charters which may be submitted to the electors of the municipality and affirmed by a majority under regulations to be established by law. Such plans have been provided for in Section 3515-1
 
 et seq.,
 
 General Code. On the other hand there is nothing in these sections which prevents a municipality from adopting its own charter regardless of the form prescribed by the Legislature.
 

 Why has this court coupled together police, fire and health as objects of interest and moment to the whole state? Beflection reveals that there are certain basic reasons that impel such a course; and in conclusion it is well to state them briefly.
 

 The state, considered in relation to its subdivisions, is the
 
 imperium
 
 and as such by its very nature has state control in state affairs. Since the municipality is
 
 imperium in imperio
 
 only in the exercise of powers conferred upon it by the state Constitution, it must in all other respects be subordinate to state authority. If fire, police and health departments be deemed purely matters of local self-government, they could be abolished and the state would be unable to step in. Obviously the abolishment of any or all of them would affect state interests. So would even, impairment. Indeed, police and fire protection and health preservation are essential to the administration of state government in such a way as to accomplish vital purposes expressed in its organic law.
 
 Kansas City
 
 v.
 
 J. I. Case Threshing Machine Co.,
 
 337 Mo., 913, 87 S. W. (2d), 195. The Constitution guarantees life, liberty and property and imposes upon the state the duty to protect and defend these rights. That duty does not end at city limits. Control of deadly, contagious diseases may often require uniform state action; prevention of fire may be ineffective without unified effort reaching into urban, suburban and rural sections; and the policing of the state might well be inadequate to public need if done by a state constabulary with power
 
 *232
 
 to act only in areas outside municipalities. The state must remain sovereign in all such affairs else its authorities cannot protect rights assured to its citizens by its Constitution. These are fundamental reasons why police, fire and health undertakings are essentially attributes of state sovereignty and matters of state-wide concern.
 

 In each case the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgments reversed.
 

 Weygandt, C. J., Hart, Zimmerman and Bettman, JJ., concur.
 

 Turner, J., dissents.
 

 Matthias, J., not participating.