*586
 
 Williams, J.,
 

 con&urring. The sole question is whether the city manager of the city of Cincinnati, the respondent herein, has authority to inquire into the cause of suspension of the relator, a patrolman, as provided by ordinance or whether the suspension and hearing thereon are governed by Sections 4379 and 4380, General Code.
 

 Sections 3 and 7, Article XVIII of the Constitution, provide as follows:
 

 “Section 3. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.'”
 

 ‘ ‘ Section 7. Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.”
 

 As the constitutional powers of a non-charter municipality with respect to local self-government and such local regulations are exactly the same as those of a charter municipality, no differentiation between them need be made in pursuing this inquiry. ,
 

 A consideration of the above-quoted constitutional provisions naturally divides itself into three heads: (1) Local police, sanitary and other similar regulations. (2) Powers of local self-government where such regulations are not involved. (3) The power or authority of the municipality to act in matters of statewide concern.
 

 1. It is true there is' some confusion in the authorities as to the distinction between police regulations and the police power. In placing a construction on these constitutional provisions it is necessary to determine the exact meaning of the words “local police, sanitary and other similar regulations.” These words must be construed in the light of the whole section If
 
 *587
 
 such regulations are interpreted to mean the same as police power then home rule would be narrowed beyond compare and its limits made uncertain. The narrowing would result because what the municipality did in the exercise of the police power in local self-government would be subject to “general laws.” The uncertainty would arise because the courts have invariably refused to define the police power. The purpose of the constitutional provisions was to guarantee home rule to cities and villages in matters of local self-government, but the intent of the provisions was not to curtail the power of the state to enact laws with respect to misdemeanors. So in the latter respect municipal power was made subject to state power. Both the state and the municipality may make an act a minor penal offense, but when there is a conflict the municipal provision must give way. This rule of law prevailed before the amendment was adopted and was not changed. The intent was to use the term “regulations” in the sense of municipal legislative acts which make an act an offense and prescribe a penalty and thus to preserve the former status of both jurisdictions with respect to misdemeanors.
 

 That brings us to a discussion of the second head. In the exercise of powers of purely local self-government, charter provisions and municipal legislation may be
 
 in conflict with general laws of the state
 
 and still retain their validity. Otherwise there would have been no purpose in adopting the amendment. Municipalities now derive their powers of local self-government from the Constitution and not from the General Assembly ; and the General Assembly can not limit or take aAvay the municipal power so granted. There is that distinction between the exercise of powers of local self-government generally and the adoption and enforcement of police, sanitary and similar regulations. Conflict with general Mavs does not invalidate municipal
 
 *588
 
 legislation which is purely a matter of local self-government but does invalidate such regulations.
 

 The third head involves the power of the municipality to act in matters of state-wide concern. With respect to such matters this language was used in
 
 City of Wooster
 
 v.
 
 Arbenz,
 
 116 Ohio St., 281, at 284, 156 N. E., 210, 52 A. L. R., 518:
 

 “In performing those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property, it is settled that the function is governmental, and if the municipality undertakes the performance of those functions, whether voluntarily or by legislative imposition, the municipality becomes an arm of sovereignty and a governmental agency and is entitled to that immunity from liability which is enjoyed by the state itself.”
 

 Health, police and fire are matters of state-wide concern because action in these fields may be essential to the very life of the state. But when the state does not invade or pre-empt the field then the matter may, by the very necessity of the case, become a matter upon which the municipality may “voluntarily” act. An illustration would be the adoption of an excise tax by a municipality. The power of a municipality to adopt an excise exists so long as the state has not invaded or pre-empted this particular field by passing a law providing for the same kind of excise. See State,
 
 ex rel. Zielonka, City Solicitor,
 
 v.
 
 Carrel, Auditor,
 
 99 Ohio St., 220, 124 N. E., 134;
 
 City of Cincinnati
 
 v.
 
 American Telephone & Telegraph Co.,
 
 112 Ohio St., 493, 147 N. E., 806;
 
 Firestone
 
 v.
 
 City of Cambridge,
 
 113 Ohio St., 57, 148 N. E., 470. Compare
 
 Hall
 
 v.
 
 Industrial Commission,
 
 131 Ohio St., 416, 3 N. E. (2d), 367.
 

 At first blush it may seem that the foregoing illustration goes wide of the mark on account of the tax
 
 *589
 
 limitation provided in Section 13, Article XVIII of the Constitution; but mature reflection reveals the imposition of the excise by the state to be an exercise of general state power.
 

 If. the state has acted and later- abandons the field, the power of the municipality to act revives. For instance, should the General Assembly abandon all provisions relating to the organization or control of police service of every kind, then if there were no power vested in the municipality, it would be left without police protection.
 

 The municipality may act in appropriate matters of state-wide concern either “voluntarily or by legislative imposition” and, in so acting is “an arm of sovereignty and a governmental agency.” This dual capacity of a municipality to act for itself on the one hand and for the state on the other was pointed out in
 
 City of Cincinnati
 
 v.
 
 Gamble,
 
 138 Ohio St., 220, 34 N. E. (2d). 226.
 

 We can conclude only, assuming the foregoing principles to be sound, that legislation or charter provisions of a municipality are not necessarily invalid because they conflict with general laws. Police, sanitary and similar regulations are invalidated by such conflict, but charter provisions and municipal legislation which involve purely the exercise of local self-government are not. When the state acts in a matter affecting a municipality because it is a matter of state-wide concern, the field is pre-empted or closed and the municipality can not act on the same matter as is possible in case of police, sanitary or similar regulations.
 

 The doctrine of pre-emption was studiously avoided in
 
 Cincinnati
 
 v.
 
 Gamble, supra,
 
 because the question of a matter of state-wide concern becoming one regarding which the municipality could act, when the state did not, did not arise. Likewise the question is not directly made in the instant case. But when the validity of municipal legislation (other than regulations) is as
 
 *590
 
 serted to be based upon the fact that such legislation is not in conflict with general laws, the principles of preemption become an important matter of inquiry.
 

 Let us summarize: (a) In the sphere in which local police, sanitary and other similar regulations may be adopted, both the municipality and state may act but in case of conflict the former must give way. (b) In matters pertaining purely to local self-government the state must give way and can not act. (c) Where the state acts as to a matter of state-wide concern the preemption of the field precludes the municipality from acting; but, as an arm of the state, the municipality may act in proper matters of state-wide concern when there is no pre-emption.
 

 A writ of prohibition should be granted not on the ground that municipal legislation permitting the city manager to inquire into the suspension of relator is a police regulation or an exercise of police power, but solely on the ground that the matter is of state-wide concern and the inquiry and hearing as to suspension are governed by Sections 4379 and 4380, General Code.