Turner, J.,
 

 dissenting. The syllabus approved by the majority is not strictly responsive to the reasoning and conclusions contained in the opinion. The opinion controls the syllabus, the latter being merely explanatory of the former. The decision of the case must be based upon the facts as disclosed by the record. Therefore, this dissenting opinion will be directed to the decision of reversal and the reasoning and conclusions contained in the opinion.
 

 It is stated in the opinion that:
 

 “The question for decision under Section 3714, Gen-' eral Code, is limited to-whether the defendant was maintaining a nuisance by reason of the two stop signs on Garfield avenue.”
 

 The answer to the question as above propounded is given in the opinion in the following words:
 

 “It follows that an action for damages for personal injury against a municipality cannot be maintained, based upon the claim that such municipality created and maintained a nuisance by placing stop signs in close proximity to an intersection, even though the
 
 *528
 
 injured person claims such stop signs were placed upon the wrong street and that she was misled thereby into the belief that she had the right of way.”
 

 With this conclusion we disagree.
 

 It is alleged in the amended petition that the agents and employees of the municipality had
 
 wrongfully
 
 placed said stop signs on the
 
 wrong street,
 
 in violation of the ordinance designating Garfield avenue as a through street, and that a nuisance was thereby created endangering the lives of travelers on the streets and highways. The nuisance is further described in the amended petition as being created by the form and structure of two
 
 unauthorised
 
 stop signs of which the municipality had notice. Plaintiff also alleged that she drove into the intersection in reliance upon such stop signs as giving her the right of way.
 

 . Another reason assigned for the decision of this case is that the allegations of the amended petition show that the sole proximate cause of the collision was the negligence of the driver of the other car. * With this conclusion we cannot agree.
 

 As stated in 30 Ohio Jurisprudence, 300, Section 2, the term “nuisance” has extended application and the definitions thereof vary. In fact a'single definition that will fit all cases seems impossible.
 

 . In the case of
 
 Railroad Co.
 
 v.
 
 Carr,
 
 38 Ohio St., 448, 43 Am. Rep., 428, Judge Mcllvaine said at page 453:
 

 “An actionable nuisance is defined by Mr. Cooley in his work on torts, to be anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights; and, on page 566, he says: ‘As the definition assumes the existence of wrong, those things which may be annoying and damaging, but for which no one is in fault, are not to be déemed nuisances, though all the ordinary consequences of nuisances may flow from, them.’ ” See, also, 39 American
 
 *529
 
 Jurisprudence, 280, Section 2; 46 Co'rpus Juris, 645, Section 1.
 

 Our position is that the duty of a municipality under Section, 3714, General Code, to keep its streets free from nuisance is not limited to correcting mere physical defects but requires the municipality to keep its streets free from anything which in law constitutes a nuisance. We are of the opinion that the allegations of the amended petition describe a nuisance of which the municipality had notice, and that such nuisance, if proved, is actionable under Section 3714, General Code.
 

 No state law, past or present, authorized the erection or maintenance of the signs here involved. Whether a valid ordinance granting such authority might have been or might be enacted need not be considered here. Suffice it to say that if there existed such a valid ordinance it would be a matter of defense.
 

 The amended petition alleges that the signs were wrongfully placed and a nuisance thereby created. The petition further alleges that “the city of Newark, Ohio, had at no time duly designated Oakwood avenue as a through street, main thoroughfare *
 
 *
 

 Whether the alleged nuisance was the proximate cause of plaintiff’s injuries will depend upon plaintiff’s proof at the trial. We are concerned here only with the sufficiency of the allegations of the amended petition. No motion was filed by defendant to require plaintiff to make definite and certain her allegations that her injuries were proximately caused by the alleged nuisance created by defendant on Garfield avenue in the form and structure of two unauthorized stop signs. Neither was there a motion to make the description of the nuisance definite. While the demurrer does not admit a conclusion of law the distinction between conclusions of law and conclusions of fact is shadowy.
 

 
 *530
 
 As stated in Bates’ Pleading, Practice, Parties and Forms (4 Ed.), 202, Section 236a:
 

 “It is not easy to determine, and less easy to de.scribe, what is a conclusion of law and what is merely an ultimate fact, and what allegation is a compound of law and fact, permissible in certain connections to avoid prolixity, and in other connections is bad plead-' ing. Thus, an averment of negligence is generally an ultimate fact, or a name applied to a course of conduct or class of facts collectively, to state which in detail would violate th,e rule against pleading evidence. *= * # J J
 

 Section 2366, ibid, states:
 

 “If language amounting to a conclusion of law, also, according to its ordinary meaning, contains a fact constituting a cause of action or defense, it is not demurrable, but motion to make more definite lies, and it is cured by not objecting. * * ®”
 

 The opinion takes the position that this court may at this time say as a matter of law that the alleged nuisance was not the proximate cause of plaintiff’s injuries, but that the negligence of the driver of the other car was the sole proximate cause. The opinion criticizes the failure in the amended petition to allege whether the driver of the other car did or did not stop his automobile on Garfield avenue. We think such an allegation immaterial.
 

 The opinion contains the statement: “On the other hand if Beal failed to obey the stop sign before entering the intersection then he was guilty of negligence
 
 peo- se
 
 and the collision was equally the result of Beal’s negligence.” Surely the majority do not mean to acquiesce in the statement that the failure to observe an unauthorized stop sign erected
 
 on
 
 a main thoroughfare is negligence
 
 per se.
 
 Indeed, this court has held that the duty imposed by the statute upon the driver of a vehicle on an
 
 intersecting
 
 highway is not a specific re
 
 *531
 
 quirement to do or omit to do a definite act but rather a rule of conduct and the rule of
 
 per se
 
 negligence is not applicable thereto. See fourth paragraph of syllabus of
 
 Heidle
 
 v.
 
 Baldwin,
 
 118 Ohio St., 375, 161 N. E., 44. It is axiomatic that negligence is never presumed, yet in the majority opinion we have an application of the exact opposite of this principle.
 

 In the case of
 
 Martin, Jr.,
 
 v.
 
 Heintz,
 
 126 Ohio St., 227, 184 N. E., 852, this court held:
 

 “There is no presumption of negligence, except such as arises from facts proven. There is a presumption of freedom from negligence, and such presumption stands until rebutted by evidence.”
 

 • In the case of
 
 Pitt, Admx.,
 
 v.
 
 Nichols,
 
 138 Ohio St., 555, 37 N. E. (2d), 379, this court held:
 

 “A presumption of negligence does not arise from the mere fact that a collision occurred which resulted in injury.”
 

 In 29 Ohio Jurisprudence, 627, Section 150, it is said,
 
 inter alia:
 
 “Negligence and contributory negligence then, are governed by the same rules. Neither is presumed. ’ ’
 

 We grant that if the
 
 evidence
 
 discloses that the negligence of the driver of the other car was the
 
 sole
 
 proximate cause of plaintiff’s injuries the city would not be liable. But it is our position that the allegations of the amended petition do not show or justify the inference that an intervening cause, to wit, the action of the driver of the other car, was the sole proximate cause of plaintiff’s alleged injuries.
 

 In 29 Ohio Jurisprudence, 495, Section 78, it is said:
 

 “It is universally agreed that the mere fact that the intervention of a responsible human being can be traced between the defendant’s wrongful act and the injury complained of will not absolve him.”
 

 We are not justified in assuming either that the act of the driver of the other automobile was the sole prox
 
 *532
 
 imate cause of plaintiff’s injuries or that plaintiff herself was negligent.
 

 In the case of
 
 Gedeon, Admr.,
 
 v.
 
 East Ohio Gas Co.,
 
 128 Ohio St., 335, 190 N. E., 924, this court held:
 

 “Damages for an injury resulting from a negligent act of the defendant may be recovered if a reasonably prudent and careful person, under the same or similar circumstances, should have anticipated that injury to the plaintiff or to those in a like situation would probably result.”
 

 This same principle applies to a nuisance created by a defendant.
 

 In the course of the opinion in the
 
 Gedeon case,
 
 Judge Bevis said at page 338:
 

 “It is not necessary, however, that injury to the plaintiff, himself, be foreseeable. It is enough that the act in question may, in human probability, produce harm to persons similarly situated. Nor is it necessary that the defendant, himself, actually anticipate or foresee the probability of injury to anyone. It is enough that the probability of injury to those in the plaintiff’s general situation should have been perceived by a reasonably prudent and careful person.”
 

 In the case of
 
 City of Hamilton
 
 v.
 
 Dilley,
 
 120 Ohio St., 127, 165 N. E., 713, this court held:
 

 “It is the province of "the court to define a nuisance and the province of the jury to determine whether the circumstances of the particular case come within the definition of a nuisance.”
 

 In the course of the opinion in the
 
 Dilley case,
 
 Chief Justice Marshall said at page 129:
 

 “In the former decisions of this court absolving municipalities of liability for negligence in the performance of governmental functions, it has not been doubted that such responsibility can be placed upon the municipality by legislative action. More than 75 years ago (Section 63 of an act to provide for the or
 
 *533
 
 ganization of cities, 50 Ohio Laws, 244) the Ohio Legislature did impose a liability upon municipalities, as now set forth in Section 3714, General Code * * V’
 

 In her amended petition plaintiff claims in substance that in reliance upon the presence of stop signs on Garfield avenue she assumed that a vehicle travelling as she was on Oakwood avenue had the right of way and that the presence of such signs on Garfield avenue under the circumstances constituted a nuisance which was the proximate cause of her injuries.
 

 One of the tests for ascertaining whether the consequences of a wrongful act or omission are natural and probable is to determine whether the surrounding circumstances of the particular case are such that the consequences might and should have been foreseen or anticipated (in the instant case by the city) as likely to follow the wrongful act or omission (in this case, the sufferance of misleading traffic signs in a public street).
 

 In discussing the foregoing test as applied to a negligent act it is said in 29 Ohio Jurisprudence, 485, Section 69:
 

 ‘ ‘ This test is frequently made where the negligence of a defendant precipitates the plaintiff into a place of extreme danger, from which he cannot extricate himself in time to avoid injury; and the injury is a consequence such as, under the attending circumstances, could have been foreseen as likely to follow the negligent act of the defendant, the defendant is liable.”
 

 This text is based upon the language of the per
 
 curiam
 
 opinion of this court in the case of
 
 Community Traction Co.
 
 v.
 
 Freeman,
 
 116 Ohio St., 448, 156 N. E., 598.
 

 In the majority opinion it is said:
 

 “ A municipality has constitutional as well as legislative authority to control traffic upon its streets, to determine at what intersections traffic shall be re
 
 *534
 
 quixed to stop, and to place stop signs at intersections where the municipal authority deems it reasonable and proper.”
 

 This statement is contrary to the theory upheld by the majority in other cases involving matters of statewide interest.
 

 In the case of
 
 Schneiderman, an Infant,
 
 v.
 
 Sesanstein,
 
 121 Ohio St., 80, 167 N. E., 158, 64 A. L. R., 981, this court held that an ordinance of a municipality which prescribes
 
 a manner of
 
 driving or a rate of speed of automobiles in conflict with the provisions of the statute is invalid. In the course of the opinion at page 84, Judge Matthias said:
 

 “General laws have been enacted regulating the manner of driving, and particularly the speed of automobiles upon the roads and highways of the state. These laws are safety regulations enacted in the interest of, and for the protection of, the public, and they definitely fix and prescribe the standard of care that must- be exercised in the operation of automobiles
 
 throughout the state.”
 
 (Italics ours.)
 

 The last-quoted statement from the majority opinion in the instant case is contrary, also, to the specific provision of Section 3714, General Code, which provides :
 

 “Municipal corporations shall have special power to regulate the use of the streets,
 
 to be exercised in the manner provided by law.
 
 # * *” (Italics ours.)
 

 If it be argued that the foregoing language of Section 3714, General Code, was inserted in that section prior to the enactment of Article XVIII of the Ohio Constitution, then attention is called to the fact that the
 
 Schneiderman case, supra,
 
 was decided in 1929 and to the holdings in such recent cases as
 
 City of Cincinnati
 
 v.
 
 Gamble et al., Trustees,
 
 138 Ohio St., 220, 34 N. E. (2d), 226, which was a case involving the establishment of retirement allowances, pension and death
 
 *535
 
 benefits for firemen and policemen. It was there held in paragraph three of the syllabus as follows:
 

 “In matters of state-wide concern the state is supreme over its municipalities and may in the exercise of its sovereignty impose duties and responsibilities upon them as arms or agencies of the state.”
 

 Section 6307-6, General Code (being a section of the Uniform Traffic Act), provides:
 

 “The provisions of this act shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this act unless expressly authorized herein.”
 

 The holding in the
 
 Gamble case, supra,
 
 is typical of the holdings of this court in other recent cases involving matters of state-wide interest.
 

 It is also said in the majority opinion: “Reference is made in plaintiff’s brief, to the Uniform Traffic Act (Sections 6307-1 to 6307-110, both inclusive, General Code).
 

 £lThe petition in this case clearly discloses that Garfield avenue was designated as a main thoroughfare in 1938. The effective date of the Uniform Traffic Act was September 6, 1941. Therefore, the provisions of that act are inapplicable here. Even if applicable, the Uniform Traffic Act does not extend or enlarge the liability of a municipality under Section 3714, General Code.”
 

 We do not acquiesce in either of the foregoing conclusions. The cause of. action set out in the amended petition arose, if at all, on September 29, 1942, after the effective date of the Uniform Traffic Act which regulates the designation by a municipality of any highway as a through highway and regulates the authority of a municipality to require vehicles to stop before entering or crossing an intersection or to des
 
 *536
 
 ignate any intersection as a stop intersection or to require vehicles to stop at one or more entrances to such intersection. Such act further provides that no such designation shall be effective until signs giving notice of such local traffic regulations are posted upon or at the entrances to the highway or part thereof affected as may be deemed most appropriate. (Sections 6307-7, 6307-11 and 6307-63, General Code.)
 

 Section 6307-16, General Code, provides in part:
 

 “(a) No person shall place, maintain, or display upon or in view of any highway any unauthorized sign, signal, marking, or device which purports to be or is an imitation of or resembles a traffic-control device or railroad sign or signal, or which attempts to direct the movement of traffic, or which hides from view or interferes with the effectiveness of any traffic-control device or any railroad sign or signal, and no person 'shall place or maintain nor shall any public authority permit upon any highway any traffic sign or signal bearing thereon any commercial advertising. This shall not be deemed to prohibit the erection upon private property adjacent to highways of signs giving useful directional information and of a type that cannot be mistaken for traffic-control devices.
 

 “(b) Every such prohibited sign, signal, marking or device is hereby declared to be a public nuisance and the authority having jurisdiction over the highway is hereby empowered to remove the same or cause it to be removed.”
 

 We need not stop at this time to determine whether the word “person” in Section 6307-16, General Code, is broad enough to cover a municipality but we do call attention to the fact that a nuisance in a public street is not limited to physical defects but includes as well proscribed signs.
 

 If by the last quotation from the majority opinion it was intended to say that the Uniform Traffic Act did
 
 *537
 
 not control the erection of the signs in question in the year 1938, the complete answer to such conclusion is that no state law or municipal ordinance (so far as disclosed) authorized the erection of such signs.
 

 Section 6310-30, General Code (118 Ohio Laws, 549), in effect until the effective date of the Uniform Traffic Act, defines certain roads as main thoroughfares, but no such road is here involved.
 

 At the time of the enactment of the ordinance referred to in the amended petition, Section 6310-32, General Code (114 Ohio Laws, 161), provided:
 

 “Local authorities shall have the right to designate by ordinance or resolution additional main thoroughfares and to designate what vehicles shall have the right of way at intersections of main thoroughfares; provided, however, that legible and appropriate signs be erected along the roads and highways intersecting such main thoroughfares, and that, such signs outside the corporate limits of a municipality, shall not be nearer than one hundred feet from such intersection.”
 

 If we were to assume that the ordinance designating Garfield avenue as a main thoroughfare is still valid notwithstanding the repeal of Section 6310-32, General Code, and the later enactment of the Uniform Traffic Act, there still was no authority in the municipality to erect stop signs on Garfield avenue. Such unauthorized signs had the probable effect of misleading drivers and of luring them into places of danger. The allegations of the amended petition negative any inference that' the erection and maintenance of such stop signs was a regulation of the streets “in a manner provided by law.”
 

 We are of the opinion that the facts alleged in plaintiff’s amended petition show a nuisance which, if proven to have been the proximate cause' of her injuries, would create liability on the part of the defendant.
 

 Paraphrasing the language of the opinion in
 
 City of
 
 
 *538
 

 Hamilton v. Dilley, supra,
 
 as well as some of the language in the opinion in
 
 Community Traction Co.
 
 v.
 
 Freeman, supra,
 
 the only real controversy in the instant case is whether the proximate cause of plaintiff’s injuries was the erection of the stop signs on Grarfielcl avenue, which under all the attendant circumstances created a nuisance and led plaintiff to assume that she had the right of way, whereby she was precipitated into a place of extreme danger from which she could not extricate herself in time to avoid injury and that her injuries were the consequence such as under the attendant circumstances could have been foreseen as likely to follow from suffering such a nuisance to exist in a public street.
 

 Williams, J., concurs in the foregoing dissenting-opinion.