CITY OF HEATH *v.* LICKING COUNTY REGIONAL AIRPORT
AUTHORITY ET AL.

(No. 53106—Decided September 7, 1967.)

Common Pleas Court of Licking County.

*Mr. John K. Taylor,* director of law, and *Mr. Alba L. Whiteside, Jr.,* for plaintiff.
*Mr. J. Gilbert Reese,* for Licking County Regional Airport Authority.
*Mr. Neil M. Laughlin,* prosecuting attorney, for Board

of County Commissioners of Licking County.

Mr. *Donald M. Byrd* and Mr. *E. Clark Morrow*, for Newark Asphalt Paving Company.

Mr. *John Young*, for John Young Excavating Company.

ALLEN, J. This action was brought by the city of Heath and seeks to enjoin The Licking County Airport Authority from the expansion of The Licking County Airport.

The original airport site, prior to its transfer to The Licking County Regional Airport Authority in the spring of 1967 by the city of Newark, had been operated as an airport since on or about the year of 1930, when the area was agricultural in nature and was known as Newark Township. Industrial and residential development in the area has occurred over the years and the airport site is now completely within the corporate confines of the city of Heath.

Additional land on the western end of the original airport site was given in the spring of 1967 to The Licking County Regional Airport Authority by the Union Oil Company of California and The Byerlite Corporation. These tracts were part of their respective industrial sites.

Plans call for the present airport runways to be expanded and extended over the newly acquired land.

Plaintiff contends that the airport expansion which is being undertaken is in violation of its zoning ordinance and the laws of the state of Ohio. Section 1121.11 (a) (11) of the Codified Ordinance of the city of Heath prohibits a "commercial aviation field" and classifies it as a nuisance in any "R," "B" or "I" district; that the airport expansion will deprive its citizens of quiet, peaceable and comfortable use of their premises; and that the airport expansion does and will continue to constitute an irreparable injury, for which the plaintiff has no adequate remedy at law but the intervention of a court of equity.

The defendant Board of County Commissioners of Licking County, Ohio, contends that the state of Ohio has pre-empted the field on the promotion of airport facilities

throughout the state of Ohio and has provided that a regional airport authority, under Chapter 308, Revised Code, has power of eminent domain; that the interests of the public at large within the state of Ohio and Licking County take precedence over the zoning ordinances of the city of Heath; that the provision in the zoning ordinance of the city of Heath prohibiting commercial aviation fields as a nuisance is unconstitutional; and that the city of Heath is guilty of laches.

The defendant The Licking County Regional Airport Authority contends that it was organized to investigate the implementation and construction of an airport facility in Licking County and has been so organized for one and one-half years and decided to improve and construct new airport facilities at the site of the former Newark Airport, located within the corporate boundaries of the city of Heath; and that a contract has been entered into with the defendant, The Newark Asphalt Company, to perform certain work in connection with the expansion of the county airport.

The defendants The Newark Asphalt Paving Company and John Young Excavating Company, as a subcontractor, admit the entering into a contract with The Licking County Regional Airport Authority.

The issues raised by the pleadings and the evidence adduced at the hearings involve the following questions of law:

I. Is a municipal zoning ordinance which prohibits the establishment or use of a commercial aviation field as a nuisance valid?

II. Are the zoning regulations of a municipality applicable to prevent a use of land by a regional airport authority, in pursuance of its public purpose?

III. Does Section 713.02, Revised Code, require approval of a city planning commission for the establishment or expansion of an aviation field?

With regard to the facts of the case, the relevant portions are as follows, most of which were stipulated by the parties:

The plaintiff, city of Heath, is a duly organized city,

organized and operating under a charter, pursuant to the Constitution of the state of Ohio.

The defendant The Licking County Regional Airport Authority is duly organized and operating "The Licking County Airport," by virtue of Chapter 308, Revised Code, and has acquired title to the original airport site from the city of Newark.

The original airport site, prior to its transfer in the spring of 1967 to The Licking County Regional Airport Authority, had been operated as a municipal airport by the city of Newark since on or about the year 1930, when the area was of an agricultural nature and known as Newark Township.

Title to additional land, adjoining to the west the original airport site, was donated in the spring of 1967 to The Licking County Regional Airport Authority by the Union Oil Company and the Byerlite Corporation, which tracts were part of their respective industrial sites.

The entire site of The Licking County Regional Airport Authority, as now located, is entirely within the corporate limits of the city of Heath.

The zoning ordinance of the city of Heath was originally enacted on November 6, 1958. That section 1211.11 (a) (11) reads as follows:

"Section 1121.11 PROHIBITED USES

"(a) The following uses shall be deemed to constitute a nuisance, and shall not be permitted in any 'R', 'B' or 'I' district.

"* * * *

"(11) Commercial aviation fields.

"* * * *"

Under the Zoning Ordinance of the city of Heath, the original airport site transferred to The Licking County Regional Airport Authority is zoned residential; the additional land donated by the Union Oil Company and the Byerlite Corporation is zoned industrial.

The Licking County Regional Airport Authority has entered into a contract for the expansion of the "Licking County Airport" with the defendant the Newark Asphalt

Paving Company. The defendant John Young Excavating Company is a subcontractor.

## Issue I

The first issue for decision: Is a municipal zoning ordinance which prohibits the establishment or use of a commercial aviation field as a nuisance valid?

The zoning ordinance of the city of Heath, which raises the issue, reads in part, as follows:

"Section 1121.11—Prohibited Uses.

"(a) The following uses shall be deemed to constitute a nuisance, and shall not be permitted in any 'R', 'B' or 'I' district:

"* * *

"(11) Commercial aviation fields."

The Supreme Court of Ohio considered an almost identical zoning ordinance in the case of *Yorkavitz* v. *Board of Township Trustees of Columbia Township,* 166 Ohio St. 349. At pages 352, 353, the court said:

"The General Assembly, in 1945, defined 'aviation' as 'transportation by aircraft; operation of aircraft; *the establishment, operation, maintenance, repair, and improvement of airports, landing fields, and other air navigation facilities; and all other activities connected therewith or incidental thereto.*' See subdivision (A) of Section 4561.01, Revised Code, and its history.

"At that time, the General Assembly also described, as follows, the purpose of the 'Ohio Aviation Board.'

"'The Ohio Aviation Board *shall encourage the development of aviation* and the promotion of aviation education within this state as, in its judgment, may best serve the public interest.' (Emphasis added.) See Section 4561.06, Revised Code, and its history.

"Section 4561.13, Revised Code, provides:

"'Every state, county, and municipal officer charged with the enforcement of state or municipal laws shall aid the Ohio Aviation Board in the enforcement of Sections 4561.01 to 4561.16, inclusive, of the Revised Code.'

"It is apparent from the reading of the above that the General Assembly definitely does *not* consider airports

as being nuisances per se, but, to the contrary, that it *does* consider airports, which are necessary incidents to 'aviation' as defined, as objects worthy of promotion and encouragement under the auspices of an 'Ohio Aviation Board' expressly created for those purposes.

"The view that airports are not nuisances per se is also supported by the weight of authority. See *Barrier* v. *Troutman*, 231 N. C., 47, 55 S. E. 2d 923; *Batcheller* v. *Commonwealth, ex rel.*, 176 Va. 109, 10 S. E. 529; *Brandes* v. *Mitterling*, 67 Ariz., 349, 196 P., 2d 464; *Warren Township School Dist.* v. *City of Detroit*, 308 Mich. 460, 14 N. W. 2d 134; *Kuntz* v. *Werner Flying Service, Inc.*, 257 Wis., 405, 43 N. W. 2d 476; and *Crew* v. *Gallagher*, 358 Pa., 541, 58 A. 2d 179.

"See, also, 2 Yokley, Zoning Law and Practice, 50, Section 203; 2 Corpus Juris Secundum 909, Section 29; and 2 Metzenbaum, Law of Zoning, 1554.

"Since, then, the General Assembly has indicated in its general laws that airports are beneficial to the public of Ohio and are to be promoted and encouraged, it follows that in delegating to township trustees the power to zone it did not include in that delegation the power to circumvent the general law by completely prohibiting airports, throughout the unincorporated territory of a township, as being nuisances per se. It is our conclusion that subdivision 14 of section five of the zoning resolution adopted by the Board of Township Trustees of Columbia Township is an unlawful extension of the power delegated to township trustees by Chapter 519, Revised Code, 'Township Zoning,' and that it is, therefore, invalid and unenforceable."

In the case of *Neil House Hotel Co.* v. *City of Columbus*, 144 Ohio St. 248, Judge Zimmerman well states the law in his opinion and we quote a portion thereof:

"Where the General Assembly has spoken through legislation, on a matter of state-wide concern, a municipal ordinance in conflict with such legislation must give way to the superior authority. *City of Cincinnati* v. *Gamble et al., Board of Trustees*, 138 Ohio St., 220, 34 N. E. 2d 226;

*State, ex rel. Arey,* v. *Sherrill, City Manager,* 142 Ohio St., 574, 53 N. E. 2d 501, and cases cited therein.

"The theory of the cases is that due consideration is to be given to all parts of a constitutional provision. Therefore, since Section 3, Article XVIII of the Constitution grants municipalities the authority to exercise local self-government, with power to adopt and to enforce within their limits such local police, sanitary and other similar regulations *as are not in conflict with general laws,* it follows that when such regulations do conflict with general laws relating to affairs of statewide interest, the general laws are paramount."

It may be argued that Section 3, Article XVIII of the Constitution of Ohio, which confers upon municipalities all powers of local government and the power to adopt and enforce within their limits such local police, sanitary and other similar regulations as are not in conflict with the general laws, renders the *Yorkavitz* decision as to a board of township trustees inapplicable to a municipality clothed with home-rule powers. However, it is the opinion of this court that since the *Yorkavitz* case found a zoning ordinance (almost identical with that of the city of Heath) to be in conflict with the general law of the state, so then the Heath zoning ordinance provision, Section 1121.11 (a) (11), must also fail in its validity and enforceability for the same conflict prohibited by the Ohio Constitution.

ISSUE II

The question of whether zoning regulations of a municipality are applicable to prevent use of land by a regional airport authority in pursuance of its public purpose is an important issue in this case.

The general rule is well stated in *State, ex rel. Helsel,* v. *Board of County Commissioners,* 37 Ohio Opinions 58, at page 62:

"Through the medium of zoning ordinances municipalities may insist that private rights in real property yield to the general good of the community, but the presumption is that the use of public property for public purposes is designed to promote the general welfare also, and

no case or textual authority has been cited, that supports the view that municipalities by zoning ordinances, may restrict or limit the use of *public property* for *public purposes.*''

The Legislature has authority to create independent bodies to act as instrumentalities to carry out its purposes.

Chapter 308 of the Ohio Revised Code provides for the method of creating a regional airport authority and sets forth the prescribed organization thereof, together with the duties and powers of its board of trustees. A reading of this chapter indicates the public nature of such an authority. Its creation is brought about by resolution of the board of county commissioners of a single county or two or more contiguous counties for the purpose of acquiring, constructing, operating or maintaining airports and airport facilities. Once created and organized through qualification of its board of trustees, it may exercise, among other functions, the power of eminent domain, the right to issue revenue bonds, the income from which is free from taxation within the state, and generally perform within the county or counties which created it, the same powers and air navigation facilities that the county might have exercised itself under Section 307.20 of the Ohio Revised Code; all personnel shall be considered public employees; monies for its operation may be appropriated annually from the county general fund by the county commissioners.

Quoting from 61 A. L. R. 2d 978, under ''Zoning-Governmental Projects'':

''The view has gained some ascendency, notably in Georgia and Ohio, that zoning ordinances are inapplicable to governmental projects for the construction of which the agency in question has the power to condemn or appropriate lands by the power of eminent domain.''

In *State, ex rel. Helsel,* v. *Board of County Commissioners, supra,* the court held that municipal zoning ordinances were not applicable to a county which had acquired land for the operation of an airport. In that case the county was acting under authority of former Sections 2433-2, 3677 and 3939, General Code, which granted to

counties in slightly different language the same rights, powers and duties to acquire and hold land for the construction, maintenance and operation of an airport facility as are granted to regional airport authorities under Chapter 308, Revised Code.

In the *Helsel case,* after finding that the grant of power to counties to construct and maintain airports was constitutional, and that use of land for an airport facility was a valid public use of land, the court considered the conflict between a valid public use of land and municipal zoning regulations and rendered the statement which was quoted above from page 62 of the *Helsel case.*

The same line of reasoning was followed in *State, ex rel. Ohio Turnpike Commission,* v. *Allen,* 158 Ohio St. 168, 174, wherein the Supreme Court of Ohio stated:

"A further complaint of the respondent is that the turnpike will pass through territory that has been zoned and that this will constitute a use in violation of the zoning ordinances. The answer to this is found in the first paragraph of the syllabus in the decision of this court in the case of *Doan* v. *Cleveland Short Line Ry. Co.,* 92 Ohio St. 461, 112 N. E. 505, which reads as follows:

" 'Where an allotter adopts a plan for the improvement of his allotment whereby the use of the lots is restricted exclusively for residence purposes, such restrictions cannot be construed as applying to the state or any of its agencies vested with the right of eminent domain in the use of the lots for public purposes.'

"This represents the majority rule and was approved and followed in the case of *Norfolk & Western Ry. Co.* v. *Gale,* 119 Ohio St. 110, 162 N. E. 385."

This court is of the opinion that a regional airport authority which is created by a county or counties to perform a function for the county which the county could exercise itself if it chose to do so, and which authority is delegated by statute with the power of eminent domain in the furtherance of its public purpose, may not be precluded from the use of land which it has acquired for such public purpose by the zoning regulations of a municipality.

This court holds that the zoning regulations of a municipality cannot be construed to apply to prevent a regional airport authority from using land which it was authorized to acquire for a public purpose which it is authorized to pursue.

## Issue III

Does Section 713.02 of the Ohio Revised Code require the approval of the city planning commission for the establishment or expansion of an aviation field?

Section 713.02 of the Ohio Revised Code sets forth the powers and duties of a city planning commission. The statute provides that the planning commission shall make plans and maps of the city and appropriate vicinity which shall show the commission's recommendations for the general location, character and extent of streets, alleys, ways, viaducts, bridges, waterways, waterfronts, subways, boulevards, parkways, parks, playgrounds, *aviation fields* and other public grounds, ways and open spaces; the general location of public buildings and other public property; the general location and extent of public utilities and terminals, whether publicly or privately owned or operated, for water, light, sanitation, transportation, communication, power, and other purposes, etc.

The statute further provides that when a plan is made, then the location, character and extent of the following facilities must be approved by the planning commission before construction: public building or structure, street, boulevard, parkway, park, playground, public ground, canal, river front, harbor, dock wharf, bridge, viaduct, tunnel, or other public way, ground, works, or utility.

Where approval is required, the statute is silent as to aviation fields, although this type facility was included among those subject to the planning commission's recommendations.

In the construction of a statute the court must be guided by it as it exists. It is not the function of the court to set forth what it thinks the statute under consideration should provide. There is no authority under any rule of statutory construction for a court to add to, enlarge or

extend the provisions of the statute to meet a situation not provided for, or contemplated thereby.

The principle of statutory construction, *"expressio unius est exclusio alterius,"* is set out in 50 Ohio Jurisprudence 2d 165, 166, Section 188, to wit:

"A general principle of interpretation is that the mention of one thing implies the exclusion of another; *expressio unius est exclusio alterius.* General words following the designation of particular subjects are ordinarily restricted by the particlar designation to include only things of the same nature as those specifically enumerateed. The maxim is to be applied where there is a grant of power, or a direction, to do a particular thing. When a statute directs a thing to be done by a specified means or in a particular manner it may not be done by other means or in a different manner."

The Legislature, in its considered judgment, has excluded aviation fields from the list of facilities which must be approved by the planning commission before construction or expansion.

This court holds that Section 713.02 of the Revised Code excludes aviation fields from the requirement of prior approval by a city planning commission.

No evidence was brought before the court that the citizens of Heath were being deprived of quiet, peaceable and comfortable use of their premises or suffering irreparable injury, or that the board of trustees for The Licking County Regional Airport Authority were guilty of want of good faith in selecting the location for the site for the Licking County Airport.

It is not to be understood from this opinion that an airfeld cannot be a nuisance; quoting from *State, ex rel. Helsel,* v. *Board of County Commissioners, supra* at page 63:

"An airport is not a nuisance per se although it may become such from the manner of its construction or operation. *Thrasher* v. *City of Atlanta,* 178 Ga. 514,173 S. E., 817; 99 A. L. R. 158 (1934); *Warren Township School District* v. *City of Detroit,* 309 Mich. 460, 14 N. W. 2d 134 (1944)."

80

Chief Justice Cardozo of the Court of Appeals of New York, in the year of 1928 in the case of *Hesse* v. *Rath,* 249 N. Y. 436, 164 N. E. 342, made a most pertinent observation on airports in his forthright way:

"Aviation is today an established method of transportation. The future, even the near future, will make it still more general. The city that is without the foresight to build the ports for the new traffic may soon be left behind in the race of competition. Chalcedon was called the city of the blind, because its founders rejected the nobler site of Byzantium lying at their feet. The need for vision of the future in the governance of cities has not lessened with the years. The dweller within the gates, even more than the stranger from afar, will pay the price of blindness."

In view of the findings of the court, other issues and matters raised by counsel are not germane and have not been considered.

For the reasons set forth in the opinion, the injunctive relief requested by the plaintiff is denied.

*Injunction denied.*