CITY OF TOLEDO ET AL. *v.* THE STATE, EX REL. LAWLER.

(Decided June 17, 1935.)

*Mr. Ralph W. Doty,* director of law, and *Mr. Jas. Slater Gibson,* for plaintiffs in error.

*Mr. Harvey G. Straub* and *Mr. J. I. O'Connor,* for defendant in error.

CARPENTER, J. In 1914 the city of Toledo adopted a charter under authority of the Home Rule provisions of the Constitution of Ohio as amended in 1912, which charter provides quite a complete scheme of municipal government for the city. A whole chapter is devoted to a Civil Service Commission. By this chapter a general classification of all of the civil service of the city and a plan of administration are presented, which, in general, follow the provisions of the then state Civil Service Law enacted in 1913 by the Legislature, Sections 486-1 to 486-31, General Code.

A Department of Public Safety is also created, and therein provision is made for a Division of Police, and for a Division of Fire. Under authority of Section 143 the chiefs of the divisions of police and fire are given exclusive right to suspend any officers or employees of their division for "incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders, or for any other just and reasonable

cause." A person so "suspended, reduced in rank or dismissed" can appeal to the civil service commission.

For many years the city has also had a Fireman's Pension Fund created under authority of the general law which is expressly sanctioned by the Charter.

In 1881, Richard Lawler, then not quite eighteen years old, became a member of the fire department of that city. In 1890 he was promoted to captain, and in 1908 to district chief, which office he continued to hold to March 6, 1935.

Prior to the adoption of the constitutional amendment in 1912, making the civil service system mandatory in Ohio, a statutory civil service had prevailed in Ohio cities, including Toledo, and Richard Lawler then held his position under that arrangement.

February 4, 1935, the Council of the city of Toledo enacted ordinance No. 10236, entitled:

"Establishing the age at which members of the Police and Fire Divisions shall retire and providing for compulsory retirement when such age limits have been reached."

That ordinance provides that when such members attain the age of sixty-five years they shall automatically "be honorably retired by the Director of Public Safety, with the right to pension as is provided by the rules of the Board of Trustees of the Police and Fire Pension Funds." This ordinance, if valid, became effective March 6, 1935, and acting under it the director retired Richard Lawler. Thereupon Lawler sought to appeal to the Civil Service Commission under Section 144 of the Charter, and that body disaffirmed the action of the director and ordered him and the chief of fire to restore Lawler to his position, which they refused to do.

Then on March 7, 1935, Lawler, as relator, filed a petition in the Court of Common Pleas, making parties defendant the city of Toledo, its Director of Public

Safety, and the Chief of Division of Fire. Lawler pleads his connection with the Division of Fire, as above outlined, and asks a writ of mandamus to compel the director and chief to restore him to his position, claiming the retirement ordinance is invalid. The trial court granted the writ prayed for, and the defendants all join in the petition in error herein seeking a reversal of that judgment.

The facts, concerning which there is no dispute, were brought to the attention of the court by the pleadings, an agreed statement of facts, and the testimony of a few witnesses. In addition to the facts above stated it was also disclosed that there are three other men, besides Lawler, in the division of fire, who are over the age of 65, and who are now subject to the ordinance in question, and that some others are approaching that age.

It also appeared that new men received in the division must, under the rule now prevailing, be not over 30 years of age, and that the average age of the department now is 43; that due to shortage of funds it may be necessary to lay off some of the force, perhaps as many as fifty, and, applying the rule of Section 486-17b, General Code, to lay off the youngest in point of service, will bring the average age of the division to between 50 and 55 years of age. It also appears that the National Fire Underwriters Association, which fixes fire insurance rates for the city, complains, among other things, that there are too many old men in the fire division, and for that reason raised the rates.

Still another fact was developed in the evidence, that because the younger men had to be laid off when reductions were required, and the older men were holding the advanced positions, promotions were not available to younger men, resulting in dissatisfaction and unrest among the younger men, which was impair-

ing the morale and efficiency of the division. No claim was made that Lawler was not able and fully capable of performing the duties of district chief.

Two questions claimed the attention of the trial court in arriving at its judgments, and the same questions are now before this court for its answer. They may be stated as follows:

1. Does the Council of the city of Toledo have the power by ordinance to fix a compulsory retirement age for the members of its fire division? And, if so:

2. Is this ordinance a reasonable exercise of that power?

The relator contends that Section 486-17a, General Code, determines the only restriction there can be upon tenure of office of civil service employees of the city of Toledo. That section reads in part as follows:

"The tenure of every officer, employe or subordinate in the classified service of the state, the counties, cities and city school districts thereof, holding a position under the provisions of this act, shall be during good behavior and efficient service. * * *"

In other words, relator's claim is that his tenure must continue until he dies, resigns or is removed as provided in Section 143 of the city Charter. Hence, that the municipality can not, especially by ordinance, interfere with his right to that office. The trial court sustained him in this, and granted the writ.

This problem takes us to an examination of the source of municipal power, particularly legislative. Prior to the amendment to the Ohio Constitution in 1912, all municipal power was permissive, that is, it had to come through delegation of that power by the General Assembly. As municipalities grew in size and importance, and their affairs of government became varied and complicated, this arrangement which had been set up in 1850 was changed, and governmental power was conferred directly upon municipali-

ties by the Constitution. Especially broad are Sections 3 and 7 of Article XVIII, which are as follows:

"Section 3. Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

"Section 7. Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government."

By these sections the power and the responsibility of the administration of purely local affairs are vested in the municipality to the exclusion, when exercised, of the power of the state to legislate on the subject, and this is true even though a charter has not been adopted under Section 7. *Village of Perrysburg* v. *Ridgway,* 108 Ohio St., 245, 140 N. E., 595.

But, how about the power to regulate civil service matters? Section 10 of Article XV is the constitutional mandate of 1912 on the subject of civil service, and is as follows:

"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."

While there may be diversity of opinion as to what powers are so purely local that the municipal control is exclusive to that of the state, as contemplated in Section 3, Article XVIII, quoted above, civil service is not now one of them, for in the early case of *State, ex rel. Lentz, et al., Civil Service Comm.,* v. *Edwards,* 90 Ohio St., 305, 107 N. E., 768, that was definitely settled by the Supreme Court, and it is made equally clear that the municipal provisions may differ from

the general law on that subject. At page 309, the opinion reads:

"The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the constitutional provisions above referred to. As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of Section 10 of Article XV, and do not conflict with any other provisions of the constitution, they are valid and under the cases referred to discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective."

In that case, a charter provision was under consideration. The trial court in the present case expressed the opinion that Toledo might, by charter, make the rule laid down in the retirement ordinance, but that Council lacks such power.

In *Perrysburg* v. *Ridgway, supra,* the Supreme Court found power in the council of a non-charter village to enact an ordinance dealing with a local matter at variance with state law. There was a difference of opinion in the court as to whether the subject there under consideration, an ordinance which prohibited interurban busses from receiving or discharging passengers on the village streets, was local and subject to the exclusive control of Council, but that such difference did not extend to the power over that which is admittedly local, as is civil service.

Looking to the Charter of Toledo we find no provision which can be construed as limiting the power

of Council to adopt a general retirement rule for its civil service employees. In fact, Section 26 says:

"Except as reserved to the people by the charter, the legislative power of the city shall be vested in a Council. * * *"

Nor does a retirement plan, if reasonable, conflict with civil service provisions, or any others, of the Constitution. In fact, it is consistent with them. The Constitution has especial regard for "appointments and promotions" and is silent on the subject of retirement or tenure of office.

Recently the General Assembly has enacted a retirement system for state employees, Sections 486-32 to 486-75, General Code. By Section 486-59 an age retirement limit has been fixed, and no change was made in Section 486-17a, ·the tenure section quoted above.

From these authorities we conclude the Council of the city of Toledo had the power to enact a retirement ordinance.

We still have for consideration the second question above propounded: Is the ordinance enacted reasonable and within the discretion of that body? On this point we have no trouble in concluding that it was within the sound discretion of Council to make the retirement age sixty-five years. With the policy or propriety of such action the court can have no concern. The Supreme Court in *Perrysburg* v. *Ridgway, supra,* has well said this for us:

"It must be remembered that the question to this court is not one of municipal policy. It is simply one of municipal power. The wisdom or unwisdom of the policy is for the municipality's determination."

Our conclusion is that the trial court erred in granting the peremptory writ, that it should have refused to do so, and should have dismissed the petition of the

relator. The judgment will be reversed and judgment entered for plaintiffs in error.

*Judgment reversed and judgment for plaintiff in error.*

LLOYD and OVERMYER, JJ., concur.