Gorman, J.
 

 Under Section 143 of the charter of the city of Toledo, after a member of the fire department is suspended it is the duty of the director of public safety to inquire into the cause of suspension and, if the charge be sustained, render judgment of suspension, reduction in rank or dismissal. The relator having been suspended, John N. Edy as city manager of Toledo was about to proceed with such a hearing when this action was instituted.
 

 The first question for determination is whether, under the provisions of the charter of the city of Toledo, John N. Edy, as city manager, had the right to act as director of the department of public safety. Ordinance No. 51-36, adopted by the council on March 2, 1936, purported to give him that authority.
 

 Within the limitations imposed by the Constitution, a charter of a home rule city is to be considered the supreme law of a municipality. Consequently, decision as to the validity of the ordinance in question depends in this case entirely upon the provisions of the charter.
 

 Section 102 of the charter of the city of Toledo provides that “the council may change, abolish, combine and rearrange the departments and divisions of the city government and combine and distribute the functions and duties thereof
 
 upon the written request of the city manager/'
 
 (Italics ours.) Ample authority was given council to adopt an ordinance combining’ the office of city manager and that of director of the department of public safety, or to abolish the latter department and place the powers in the hands, of the city manager. It is conceded, however, that the city manager did not make a request in writing of the council to abolish, combine or rearrange any departments. Therefore, Section 102 has no application in this controversy, and
 
 *392
 
 it is necessary to explore other provisions of the charter to ascertain the authority of the council.
 

 It is provided in Section 61 of the charter that “the council shall appoint a city manager who shall be the chief executive and administrative officer of the city,” and that “it shall be the duty of the city manager to act as chief conservator of the peace within the city.” The city manager is required “to supervise the administration of the affairs of the city, ’ ’ except as otherwise specifically provided in the charter. He is “to make all appointments and removals in the administrative and executive service,” except as otherwise specifically provided in the charter. He is “to make all appointments and removals in the administrative and executive service,” except as otherwise provided in the charter, and is “to perform such other duties as may be prescribed by this charter or required of him by ordinance or resolution of the council.”
 

 It is said that when the council adopted Ordinance No. 51-36 it was merely placing other duties upon the city manager. Undoubtedly council could increase greatly the duties of the city manager without any objection, provided that in so doing no provisions of the charter were contravened. The difficulty with the view of appellants — that the duties of the manager were merely increased — is that it loses sight of the express provisions of the charter, which creates a department of public safety and stipulates by whom the director of that department shall be appointed.
 

 Section 101, by its terms, provides that certain administrative departments are created and established, including a department of public safety. In Section 104 it is set forth that “a director of each department
 
 shall
 
 be appointed by the city manager to ..serve during the pleasure of the city manager.” (Italics ours.) These sections impose a definite duty upon the city manager to appoint a director of the department of public safety. The council would not have the author
 
 *393
 
 ity to designate a director of the department of public safety in contravention of tbe power of appointment vested in the city manager unless it did so pursuant to a request made by him in writing under tbe provisions of Section 102.
 

 The clear and express terms of the charter place the appointing power in the city manager, and it would be inconsistent to bold that there was likewise vested in council authority to make the appointment independent of any request from the manager. We are therefore constrained to bold that council exceeded its authority in attempting to impose the duties of the director upon the city manager. Ordinance No. 51-36 was therefore ineffective to •accomplish the objectives' sought by council.
 

 Neither are we able to conclude that because tbe city manager is tbe chief executive and administrative officer and tbe chief conservator of tbe peace that be automatically became tbe director of tbe department of public safety. Tbe charter created tbe specific office of director of that department, and it was the duty of tbe city manager alone to fill that office unless it was abolished or combined with another by joint action of tbe council and of tbe .city manager under Section 102 of tbe charter.
 

 A claim cannot be made that tbe city manager designated himself as acting director of safety. Since no such formal appointment appears on tbe records of tbe city, that question is not presented to this court at this time.
 

 It is claimed, however, that tbe city manager was
 
 de facto
 
 director of tbe department of public safety, and bis title to such office must be tested by an action in
 
 quo warranto,
 
 and cannot be determined by one in prohibition. See
 
 State
 
 v.
 
 Gardner,
 
 54 Ohio St., 24, 42 N. E., 999, 31 L. R. A., 660;
 
 State, ex rel. Attorney General,
 
 v.
 
 Newark,
 
 57 Ohio St., 430, 49 N. E., 407.
 

 This contention cannot be sustained. Tbe title of
 
 *394
 
 John N. Edy as city manager is not questioned. The relator merely seeks to prevent him from exercising the functions and duties of director of public safety which council attempted to impose upon him. The purpose of the action is not to oust the city-manager from office, but merely to restrain him as an administrative official from exercising powers he does not lawfully possess.
 

 The remedy by way of
 
 quo warranto
 
 is employed to test the actual right to an office or franchise. It can neither afford relief for official misconduct, nor be used to test the legality of the official action of a public officer. When a public officer threatens to exercise ministerial powers not conferred upon him by law, or attempts’ to exercise the functions of his office beyond its territorial limits, the proper remedy to restrain such action would be by injunction. When the public officer is attempting to exercise quasi-judicial functions unlawfully, the proper remedy is prohibition.
 

 In this case the functions sought to be exercised by conducting hearings were of a quasi-judicial nature. This court has frequently granted a writ of prohibition to keep administrative tribunals within the limits’ of their own jurisdiction.
 
 State, ex rel. Nolan,
 
 v.
 
 Clen-Dening,
 
 93 Ohio St., 264, 112 N. E., 1029;
 
 State, ex rel. McCrehen,
 
 v.
 
 Brown; Secy. of State,
 
 108 Ohio St., 454, 141 N. E., 69;
 
 State, ex rel. Schorr,
 
 v.
 
 Viner,
 
 119 Ohio St., 303, 164 N. E., 119;
 
 State, ex rel. Stanley,
 
 v.
 
 Bernon, 127
 
 Ohio St., 204, 187 N. E., 733.
 

 We find that Ordinance No. 51-36, adopted by council, was ineffective to impose the duties of director of the department of public safety of the city of Toledo upon John N. Edy as city manager, and consequently, in conducting hearings to determine the charges preferred against the relator, the manager was transcending his legal powers. No director of the department of public safety having been appointed and qualified, a writ was properly allowed to prevent both the city
 
 *395
 
 manager and the safety secretary from conducting hearings' in the matter pertaining to the relator. The judgment of the Court of Appeals is therefore affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias, Day, Zimmerman, Williams and Myers, JJ., concur.