Bell, J.
 

 In the instant case neither party has filed any motion or demurrer and there is no agreed statement of facts or evidence, therefore the cause will be disposed of as if there had been filed a motion for judgment on the pleadings.
 

 The sole question presented is whether the respondent has the authority to hear and determine the charges filed against the relator.
 

 Counsel for relator vehemently assert that respondent is without authority in law to hear and determine the charges. On the other hand counsel for respondent assert with equal vigor that the city charter and administrative code grant respondent full and complete authority to hear and determine such changes.
 

 The answer to the question presented must come from a consideration and construction of certain provisions of the Constitution, General Code, city charter and administrative code adopted in pursuance of the charter.
 

 Before proceeding to the controlling question it should be noted that Section 2, Article XVIII of the Constitution, provides
 
 “*
 
 * * and additional laws may also be passed for the government of municipalities adopting the same; * * The General As-, semblv, by authority of that section, passed laws pro
 
 *578
 
 viding three plans of municipal government known as the “commission plan” (Sections 3515-11 to 3515-18, both inclusive, General Code), the “city manager plan” (Sections 3515-19 to 3515-28, both inclusive, General Code), and the “federal plan” (Sections 3515-29 to 3515-44, both inclusive, General Code).
 

 The city of Cincinnati did not organize under or adopt any of the statutory plans but adopted its charter under the general grant of power contained in Section 7, Article XVIII of the Constitution, which reads as follows:
 

 “Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this Article, exercise thereunder all powers of local self-govermnent. ”
 

 Section 3, Article XVIII, provides:
 

 “Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
 

 These two provisions of the Constitution were adopted at the same time, are
 
 in pari materia
 
 and must be construed together. See
 
 Fitzgerald et al., Bd. of Supervisors,
 
 v.
 
 City of Cleveland,
 
 88 Ohio St., 338, 103 N. E., 512, Ann. Cas. 1915B, 106.
 

 Section 3, Article XVIII, grants to all municipalities authority to exercise ail powers of
 
 local
 
 self-government, subject to the limitation that police, sanitary and other similar regulations adopted by a municipality
 
 shall not conflict with general laivs.
 
 The word
 
 local
 
 as used in that provision of the Constitution has a definite meaning. The phrase “all powers of
 
 local
 
 self-government” as used therein, means the power of self-government in all matters of a purely local nature.
 

 It seems evident that the framers of that provision had in mind that police, sanitary and other similar
 
 *579
 
 regulations were not purely
 
 local
 
 matters and therefore should continue to be controlled by general law. Hence the limitation upon the power.
 

 The debates, in the Constitutional Convention of 1912 upon the subject of the home-rule amendment (now Article XVIII of the Constitution) were both lengthy and heated. Sections 3 and 7 of that amendment proposed for adoption by the convention caused debate which at times became bitter and personal. (Vol. 2, Proceedings and Debates of the Constitutional Convention of Ohio of 1912, 1439
 
 et seq.)
 

 On the one side were those who desired to grant to municipalities unlimited power of self-government and on the other were those who favored only limited power. A comparison of the language of Sections 3 and 7 as originally proposed for adoption (by the convention) with the language of those sections as adopted (by the convention) furnishes conclusive evidence that the Constitutional Convention did not intend to adopt and recommend for passage constitutional provisions granting unlimited power of' self-government.
 

 By the adoption of Article XVTII the people granted to the municipalities of the state unlimited power of self-government in all matters purely local in their aspect but limited their power in all matters of general concern to the whole people of the state.
 

 It would be a bold man who would assert that the police power of the state does not include the establishment of and general control over police departments and the members thereof.
 

 Under the provisions of Section 3-, Article XVIII, all municipalities are granted “all powers of local self-government” and such powers are in no wise dependent upon the adoption of a charter.
 

 The language of Section 7, Article XVIII, is permissive and grants authority to any municipality to adopt a charter.
 

 
 *580
 
 It therefore follows that a municipality in adopting a charter as authorized by Section 7 is merely exercising a permissive authority of local self-government conferred upon all municipalities by Section 3; but it does not follow that after the adoption of a charter a municipality thereby has greater powers of local self-government than those which may be exercised by any municipality which has not adopted a charter.
 

 As we view these provisions, a municipality by adopting a charter form of government does not become an independent sovereignty. See
 
 Cleveland Telephone Co.
 
 v.
 
 City of Cleveland,
 
 98 Ohio St., 358, 121 N. E., 701.
 

 A municipality may adopt a charter which prescribes its form of government and definés its powers on purely local matters. The state, however, remains supreme in all matters not purely local.
 
 Billings
 
 v.
 
 Cleveland Ry. Co.,
 
 92 Ohio St., 478, 111 N. E., 155;
 
 State, ex rel. Giovanello,
 
 v.
 
 Village of Lowellville,
 
 139 Ohio St., 219, 39 N. E. (2d), 527;
 
 State, ex rel. Daly,
 
 v.
 
 City of Toledo, ante,
 
 123.
 

 At the threshold of our consideration of the ultimate question we must first determine whether this is a matter of purely local concern.
 

 As has been observed, charges have been preferred against a police officer of the city; relator claims such charges must be determined by the Director of Public Safety under the provisions of the General Code; and the respondent claims the right and authority to hear and determine those charges under the provisions of the city charter and the administrative code. The General Assembly has provided for the organization of police departments, the protection of the tenure of members thereof, the causes for suspension or discharge and the methods of procedure to effect suspension or discharge.
 

 The police department of a city is charged with the
 
 *581
 
 duty of protecting the lives and property of all persons therein, irrespective of their place of residence, and with enforcing all state laws as well as city ordinances.
 

 Those duties have a definite relation to the public safety and general welfare of society as a whole and are .a matter of statewide concern.
 

 In the case of
 
 City of Cincinnati
 
 v.
 
 Gamble et al., Bd. of Trustees,
 
 138 Ohio St., 220, 34 N. E. (2d), 226, paragraphs three and four of the syllabus read as follows:
 

 “3. In matters of state-wide concern the state is supreme over its municipalities and may in thé exercise of its sovereignty impose duties and responsibilities upon them as arms or agencies of the state.
 

 “4. In general, matters relating to police and'fire protection are of state-wide concern and are under the control of state sovereignty.”
 

 It is established by a uniform line of decisions of this court that matters pertaining to a police department are of state-wide concern and that municipalities, charter or otherwise, are without authority to adopt regulations in respect thereto which are in conflict with general law.
 

 The term “general laws” as used in Section 3, Article XVIII, has been construed to mean state statutes.
 
 Village of Brewster
 
 v.
 
 Hill,
 
 128 Ohio St., 354, 191 N. E., 366;
 
 City of Cincinnati
 
 v.
 
 Correll,
 
 141 Ohio St., 535, 49 N. E. (2d), 412.
 

 The General Assembly has provided that all members of the police department in every city shall be maintained under civil service. (Section 4378, General Code.)
 

 That the police department of a city is a matter of state-wide concern does not prevent the city from adopting any regulation in reference thereto so long as such regulation does not conflict with general laws.
 

 The power and authority of respondent to hear and determine the charges must depend, first, upon the
 
 *582
 
 provisions of the city charter and the administrative code of the city, second, upon any pertinent provisions of the General Code, and, third, upon whether there is a conflict between the provisions of the charter and the administrative code and the provisions of the General Code. •
 

 The city charter, as amended in 1926, and as still in effect, provides as follows (Section 7, Article II):
 

 “The existing departments, divisions and boards of the city government are continued unless changed by the provisions of this charter or by ordinance of the council. Within, six months after the adoption of this charter, the council shall by ordinance adopt an administrative code providing for a complete plan of administrative organization of the city government. Thereafter, except as established by the provisions of this charter, the council may change, abolish, combine and rearrange the departments, divisions and boards of the city government provided for in said administrative code, but an ordinance creating, combining, abolishing or decreasing the powers of any department, division .or board, shall require a-vote of three-fourths of the members elected to' the council, except the ordinance adopting an administrative code.”
 

 Pursuant to that authority the city council adopted an administrative code which, as now in effect, provides for four departments under the city manager known as departments of law, safety, public works and public utilities.
 

 Section 1 of Article II of the administrative code provides:
 

 “The city manager, except as otherwise provided in the charter, shall appoint and may dismiss, suspend, and discipline all officers and employees in the administrative service under his control.”
 

 It is claimed by virtue of these provisions of the charter and the administrative code the respondent is
 
 *583
 
 granted power and authority to hear and determine the charges against relator.
 

 This claim must be sustained unless applying those provisions of the city charter and the administrative code to eases involving members of the police department creates conflict with general laws.
 

 Section 4367, General Code, reads as follows:
 

 “In each city
 
 there shall be a department of pxiblic safety,
 
 which shall be administered by a
 
 director of public safety.
 
 * * *” (Italics ours.)
 

 This provision of the Code is mandatory and under its provisions every city except those organized under authority of Section 3515-1
 
 et seq.,
 
 General Code, must have a department of public safety administered by a director of public safety.
 

 Section 4368, General Code, provides in part:
 

 “* * * He [the director of public safety] shall have all powers and duties connected with and incident to the appointment, regulation and government' of these departments [police and fire departments] except as otherwise provided by law. * # *”
 

 Section 4378, General Code, provides in part as follows :
 

 “ * * * The police and fire departments in every city shall be maintained under the civil service system, as provided in this subdivision.”
 

 By the provisions of Section 4379, General Code, the chief of police has the exclusive right to suspend any member of the department for incompetence, gross neglect of duty, gross immorality, habitual drunkeness, failure to obey orders given him by the proper authority, or for any other reasonable or just cause.
 

 Section 4380, General Code, reads as follows:
 

 “If any such employee is suspended as herein provided, the chief of police * * •* forthwith in writing, shall certify such fact, together with the cause for such suspension to the director of public safety, who with
 
 *584
 
 in five days from the receipt thereof, shall proceed to inquire into the cause of such suspension and render judgment thereon, which judgment, if the charge be sustained, may be either suspension, reduction in rank or dismissal from the department, and such judgment in the matter shall be final except as otherwise provided in this subdivision. Said director, in any investigation of charges against a member of the police or fire department shall have the same powers to administer oaths and to secure the attendance of witnesses and the production of books and papers as are conferred by this subdivision upon the mayor.”
 

 By the provisions of these quoted sections the director of safety is granted the power of appointment of police officers, their supervision, the power to hear and determine charges made against them and to inflict such punishment as is justified under the facts in each particular case.
 

 We are of opinion that insofar as the city charter and the administrative code attempt to grant authority to the city manager to inquire into the cause of suspension of a member of the police department of the city and to render judgment thereon such provisions are in conflict with and must yield to the provisions of the G-eneral Code.
 

 It is further claimed that by reason of the provisions of Section 486-17a, G-eneral Code, the city manager is granted power to inquire into the cause of suspension and render judgment thereon. This claim is based upon the contention that the city manager is the appointing officer.
 

 We have already called attention to the provisions of Section 4368, General Code, which grant to the director of public safety all power connected with and incident to the appointment of members of the police department. We find no merit in the contention of respondent upon this phase of the controversy.
 

 
 *585
 
 Finally respondent contends that prohibition is not the appropriate remedy.
 

 The writ of prohibition has been defined by this court in the case of
 
 State, ex rel. Brickell,
 
 v.
 
 Roach, Recr.,
 
 122 Ohio St., 117, 170 N. E., 866. Paragraph one of the syllabus reads as follows:
 

 “A writ of prohibition is an extraordinary judicial writ, issuing out of a court of superior jurisdiction, to prevent an inferior court or tribunal from usurping jurisdiction with which it is not legally invested.”
 

 The functions here sought to be exercised are of a quasi-judicial náture and this court has on numerous occasions granted a writ of prohibition to keep administrative tribunals withifi. the limits of their jurisdiction.
 
 State, ex rel. Nolan,
 
 v.
 
 ClenDening,
 
 93 Ohio St., 264, 112 N. E., 1029;
 
 State, ex rel. McCrehen,
 
 v.
 
 Brown, Secy. of State,
 
 108 Ohio St., 454, 141 N. E., 69;
 
 State, ex rel. Schorr,
 
 v.
 
 Viner et al., Civil Service Comm.,
 
 119 Ohio St., 303, 164 N. E., 119; State,
 
 ex rel. Stanley,
 
 v.
 
 Bernon et al., Bd. of Elections,
 
 127 Ohio St., 204, 187 N. E., 733; and
 
 State, ex rel. Pawlowicz,
 
 v.
 
 Edy, City Mgr.,
 
 134 Ohio St., 389, 17 N. E. (2d), 638.
 

 We conclude that the city manager has no authority or jurisdiction to proceed to inquire into the cause of the suspension of relator or to render judgment thereon; that relator has no adequate remedy at law and, the answer admitting that respondent will proceed to exercise that jurisdiction unless prohibited from so doing- by this court, it follows that the writ should be and hereby is allowed.
 

 Writ allowed.
 

 Weygandt, C. J., Matthias, Hart, Zimmerman and Williams, JJ., concur.
 

 Turner, J., dissents.