### LA POLLA ex YOUNGSTOWN (City), v. DAVIS.

Common Pleas Court, Mahoning County.

No. 127242. Decided September 15, 1948.

John W. King, Columbus, Henry C. Church, D. Pauline Church, Youngstown, for plaintiff.

H. Herschell Hunt, Law Director, Youngstown, for defendant Davis, finance director.

Robert D. Huxley, Youngstown, for defendant, Allen.

## OPINION

By FORD, J.

This is a suit in equity brought by a taxpayer under §4314 GC and seeking to restrain the payment of future salary to the defendant, Allen, as Chief of Police of the City of Youngstown. The basis of plaintiff's claim is that Allen is but a de facto officer; that he was illegally appointed

by the Mayor in that, (1) the office to which he was appointed requires its incumbent under the **Ohio Constitution, Article XV, Section 4,** to have the qualifications of an elector, which he did not have, and (2) that the office is in the competitive classified service under §486-8 GC and that he did not qualify for the same under the State Civil Service Laws.

We overruled demurrers to the Petition on the ground that plaintiff, as a taxpayer, was entitled under §4314 GC to raise the question of Allen's right to future salary. In doing so we confined ourselves to that issue alone, disclaiming any intention of passing on the merits of the controversy, though arguably they were raised by the demurrer.

**Sec. 4314 GC** merely enables a taxpayer under certain conditions to exercise the statutory duty of the chief law officer of a city under **§4311 GC** to apply for an order of injunction to restrain the misapplication of municipal funds. The purpose of these sections is to insure the preservation of any rights a municipality might have in the premises. But the plaintiff to recover must not only establish misapplication of funds as a fact but also that the misapplication is one that equity will restrain.

It is settled law that a de facto officer can not sue to recover salary withheld from him; on the other hand, that if he has received his salary he may keep it. The intermediate question is involved here, can he be prevented from drawing it?

The law is stated in High on Injunctions, 4th Ed. * * * 1312, 1314.

"No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law."

"The general principle as above stated * * * denying relief in equity for the purpose of determining disputed questions of title to public officers, is also applied to cases where it is sought by injunction to restrain the collection of the fees and emoluments pertaining to an office, pending a contest as to the title."

This application of the principle has been followed in many cases from other states and is supported by the following

Ohio cases, all of which were taxpayer's suits seeking to restrain the payment of salary where the controlling question was the legality of the appointment or election of the recipient, and in each case the court held that quo warranto was the only proper remedy to test the question. **Morrow v. City of Cleveland, 73 Oh Ap 460, 469, 29 O. O. 136,** State, ex rel, Srofe v. Vance, 18 O. N. P. N. S. 198, State, ex rel. Vail v. Craig, 21 O. C. C. 175 (affirmed **64 Oh St 588).**

No Ohio case has been found involving a de facto public officer which takes the contrary view.

Allen was publicly appointed Chief of Police by the proper appointing authority; he has been in possession of the office and discharging its functions with general public acquiescence. Were we to order that his pay be stopped, he would continue in office though the basis of our order could only be that he was ineligible to the office. The anomalous and confusing result would be to have a chief of police in office, performing the duties and subject to the responsibilities of that office, and yet not entitled to pay for his work. Such a situation would be obviated by following the law which requires a direct attack by a quo warranto proceeding, in which Allen's title to the office can be finally determined, rather than by permitting a collateral attack which would require Allen to resist without insuring a final settlement of his status.

Even if, therefore, plaintiff correctly contends Allen to be the occupant of an office, we determine that the present case is one in which equity should not intervene, irrespective of whether or not the plaintiff himself has a legal remedy to test the legality of Allen's appointment.

The determination of the foregoing question, as well as of both of the questions raised by plaintiff in his petition, hinges upon a determination of whether Allen is a person who occupies an office. This arises by reason of **Article XV, Section 4 of the Ohio Constitution,** which reads:

"No person shall be elected or appointed to any office in this state unless possessed of the qualifications of an elector."

These qualifications are prescribed in §§4785-29 and 4785-30 GC and are that an elector shall be, among other things, a resident of this state for one year next preceding the election at which he offers to vote. Allen at the time of his appointment was not possessed of this qualification.

Bearing in mind the looseness with which the terms "officer" and "office" are applied in ordinary and even legal usage,.

we must be careful here to consider only what an "office" is within the purview of the above constitutional provision.

Fifty years ago our Supreme Court in **57 Oh St, 415,** laid down this rule, which has been applied in many cases since:

"To constitute a public office, against the incumbent of which quo warranto will lie, it is essential that certain independent public duties, a part of the sovereignty of the state, should be appointed to it by law, to be exercised by the incumbent, in virtue of his election or appointment to the office, thus created and defined, and not as a mere employe, subject to the direction and control of someone else."

The Court said further (page 425):

"The fact that a public employment is held at the will or pleasure of another, as a deputy or servant, who holds at the will of his principal, is held * * * to distinguish a mere employment from a public office, for in such cases no part of the state sovereignty is delegated to such employees."

The people of the City of Youngstown, under the provisions of the **Ohio Constitution, Article XVIII, Section 7,** the so-called Home Rule Amendment, framed and adopted a charter in which they have prescribed the form of their local government. Our Supreme Court, as lately as last month, in **State ex rel. Hackley v. Edmonds, 150 Oh St 203, 37 O. O. 474** has reaffirmed the long established right of the people of a city through a charter to determine what officers shall administer their municipal government, which shall be appointed and which elected, and what are their powers and duties. The people of a city can exercise all powers of local self-government thereunder, provided their charter does not exceed the powers granted in Section 3 of that Article nor disregard the limits imposed therein or in other articles.

In defining the powers of their officers, the people of this city have made the mayor the chief executive officer, and, by adopting the duties required of a mayor by state laws, have made him the sole conservator of the peace. They also have placed the chief of police in the unclassified civil service though the State Civil Service laws place that municipal position in the classified service. This is important here because incumbents in the classified service have a tenure during good behavior and can only be removed for cause after a hearing. An incumbent in the unclassified service is

there by appointment at the discretion of the appointing authority and may be removed therefrom at the pleasure of such authority.

It has been repeatedly held by our Supreme Court that as long as the provisions of a municipal charter comply with the reqquirements of **Article XV, Section 10 of the Ohio Constitution** relating to Civil Service, and do not conflict with any other of its provisions, they are valid and discontinue general laws on the subject as to the municipality involved.

In addition to its civil service provision, the charter specifically provides in two places that the mayor may appoint and may at will remove the Chief of Police. It is evident that the people of Youngstown have placed the sole direction of their police department in their chief executive, the Mayor, as well as the sole responsibility for its proper use in their service. They deliberately made the Chief of Police the Mayor's deputy and no more.

That being the status of the position of Chief of Police under the charter, it is clear that he holds at the will of his principal, who hires and can fire him, that as against his principal no independent police duties are appointed to him by law and that therefore, in the language of the Supreme Court in the Jennings case, supra, no part of the state's sovereignty is delegated to him. His position is a public employment, not a public office.

If not an occupant of an "office" in the constitutional sense, there is no basis in fact or in law justifying an order restraining the payment of his future salary.

It is our conclusion in this case,

(1) that plaintiff is not entitled to an injunction, even if it be conceded that Allen is the occupant of a public office;

(2) that Allen, not being the occupant of a public office within the meaning of **Article XV, Section 4 of the Ohio Constitution,** was eligible to appointment despite his residence out of the state until the day before his appointment; and

(3) that the provision of the Youngstown City Charter placing his position in the unclassified service being paramount, Allen was eligible to appointment.

Judgment will be entered for the defendants at plaintiff's costs.

JENKINS & DOYLE, JJ, concur.