Weygandt, C. J.
Fortunately the operative facts are not in dispute.
Nor is this court concerned with the relative qualifications of the relator and Frank W. Story, the present appointee, or with the relative merits of the statutory and the charter methods of appointing a chief of police.
The sole question before the court is one of law. Did the people of the city of Cleveland possess the political power to amend their charter and choose their own method for selecting their own chief of police other than from a civil service eligible list?
The respondents rely on the following provisions of Sections 3 and 7 of Article XVIII of the Constitution of Ohio, adopted September 3, 1912:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws. ’ ’
“Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government. ’ ’
Since adjectives and adverbs are the chief villains and troublemakers in any language — especially that of the law — it is not surprising that the foregoing constitutional provisions have been highly and often bitterly controversial even from the time they were first proposed. A power that clearly is one of “local” self-government to one mind often is clearly the contrary to another. This court has attempted to be helpful by announcing certain principles to be observed in construing and applying the constitutional language, but the decisions have been limited mainly to the intermittent consideration of a particular power as it has been questioned. Hence, it is not surprising, either, that, with the changing personnel of the court *439 during the 44 years these provisions have been in effect, it has been no easy task to maintain something even remotely resembling consistency, and it would serve no useful purpose to indulge in a discussion of the details of each of the numerous decided eases. Nevertheless, a study of several of the court’s pertinent pronouncements is necessary.
One of this court’s earliest expressions on this important subject is in the case of Fitzgerald et al., Board of Deputy State Supervisors, v. City of Cleveland, 88 Ohio St., 338, 103 N. E., 512, Ann. Cas. 1915B, 106, which was decided in 1913, less than a year after the adoption of Article XVIII of the Constitution. The two paragraphs of the syllabus read:
“1. The provisions of Section 7, Article XVIII of the Constitution as amended in September, 1912, authorize any city or village to frame and adopt or amend a charter for its government and it may prescribe therein the form of the government and define the powers and duties of the different departments, provided they do not exceed the powers granted in Section 3, Article XVIII, nor disregard the limitations imposed in that article or other provisions of the Constitution.
“2. Under Sections 3 and 7, Article XVIII, as so amended, municipalities are authorized to determine what officers shall administer their government, which shall be appointed and which elected, that the nomination of elective officers shall be made by petition by a method prescribed, and elections shall be conducted by the election authorities prescribed by general laws.”
In the recent decision in the case of Harsney v. Allen, Jr., Chief of Police, 160 Ohio St., 36, 113 N. E. (2d), 86, this court held:
“Under the plain and unambiguous language of Section 48 of the Home-Bule Charter of the City of Youngstown, the chief of police of that city has exclusive control of the stationing and transfer of all patrolmen and other officers and employees constituting the police force, and where, without impairing the status and emoluments of a police radio operator who is a member of the police force, such chief assigns to such operator the duties and functions of a patrolman, injunction will not lie to restrain such chief in so exercising such control. ’ ’
*440 And in the opinion in that case it was said:
“In the case of Lapolla v. Davis, 55 Ohio Law Abs., 490, it was held that the provision in the Youngstown charter placing the position of police chief in the unclassified service is paramount to Section 486-8, General Code, which places that position in the classified service subject to competitive examination. A motion to certify the record in that case was overruled by this court and an appeal as of right dismissed (151 Ohio St., 550, 86 N. E. [2d], 615).
i Í * * *
“Whether the chief of police should have control and power over the employees in his department, which the Charter of the City of Youngstown gives him, is a question for the people of Youngstown, and unless and until they see fit to amend their charter it is impossible to see how the language of section 48 thereof can have any other meaning than that which we have ascribed to it.”
Do the Cleveland charter provisions constitute “regulations” within the meaning of the second part of Section 3 of Article XVIII authorizing municipalities “to adopt and enforce within their limits such local police * # * regulations, as are not in conflict with general laws?” This court is of the opinion that the term is properly used with reference to rules relating to the operation of a police department but not with reference to the method of selecting an administrative head or chief thereof.
Is the method of selecting a chief of police a matter of local self-government within the meaning of the first part of section 3 providing that “municipalities shall have authority to exercise all powers of local self-government?” It would seem that if a municipality is to possess such powers, one of them should be the authority to determine the method of selection that probably would be most effective and desirable in meeting the needs of that particular community.
Hence, this court is of the opinion that the people of Cleveland did possess the political power to amend their charter and choose their own method for selecting their own chief of police other than from a civil service eligible list.
*441 The writ of mandamus is denied.

Writ denied.

Matthias, Hart, Zimmerman, Stewart, Bell and Taut, JJ., concur.