The State, ex rel. Canada, *v.* Phillips, Director of Public Safety.*

(No. 5741—Decided November 15, 1957.)

*Judgment affirmed, 168 Ohio St., 191.

*Mr. R. Brooke Alloway,* for relator.

*Mr. Russell Leach,* city attorney, and *Mr. Frank A. Reda,* for respondent.

FESS, P. J. This is an action in mandamus brought in this court seeking to compel the respondent to revoke and set aside the appointment of Captain Harvey List to the office of Deputy Inspector in the Division of Police of Columbus, Ohio, and to appoint relator to that position. The salient facts are conceded.

Section 151 of the Columbus Charter provides that appointments in the classified service shall be made from one of three persons certified by the civil service commission.

Section 143.34, Revised Code, provides that promotions in positions above the rank of patrolmen or firemen in a police or fire department shall be made upon the certification by the civil service commission of the person receiving the highest rating.

The Civil Service Commission of Columbus proceeded under the charter and certified the names of three persons as eligible for the appointment. Instead of appointing relator, who received the highest rating, respondent appointed the person receiving the second highest rating. Thus the question is squarely presented as to whether the statute or the charter provision governs the appointment of persons in the police department of the city.

Under Article XVIII of the Ohio Constitution, municipalities have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws. Subject to the limitation with respect to conflict with general laws, the authority to exercise the powers of local self-government may be exercised without a charter. *Village of Perrysburg* v. *Ridgway,* 108 Ohio St., 245, 140 N. E., 595; *Village of Struthers* v. *Sokol,* 108 Ohio St., 263, 140 N. E., 519; *Wilson* v. *City of Zanesville,* 130 Ohio St., 286, 199 N. E., 187; *City of Cleveland* v. *Terrill,* 149 Ohio St., 532, 80 N. E. (2d), 115.

Upon the adoption of a charter, the powers of local government are to be exercised in the manner prescribed and limited by the Constitution, by the general laws having state-wide application, or by ordinances enacted pursuant thereto. Cf. *State, ex rel. Gulf Refining Co.*, v. *DeFrance*, 89 Ohio App., 1, 100 N. E. (2d), 689. A municipal charter limits, governs and controls the legislative body very much the same as the Constitution limits, governs and controls the General Assembly. *Bauman* v. *State, ex rel. Underwood*, 122 Ohio St., 269, 171 N. E., 336.

With respect to possible conflict between a charter and general law, one would think that the manner of appointment of administrative personnel of a city would be exclusively of local concern. And shortly after the adoption of the home-rule amendments, the Supreme Court so held.

In *Fitzgerald* v. *Cleveland* (1913), 88 Ohio St., 338, 103 N. E., 512, Ann. Cas. 1915B, 106, it was held that under the home-rule amendment municipalities are authorized to determine what officers shall administer their government, which shall be appointed and which shall be elected, and that the charter provisions relating to the nomination and election of officers and not the general election laws governed the nomination and election of such officers.

In *State, ex rel. Lentz*, v. *Edwards* (1914), 90 Ohio St., 305, 107 N. E., 768, the court followed the principles declared in the *Fitzgerald case* and said:

"The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the constitutional provisions above referred to. As long as the provisions made in the charter of any municipality with reference to its civil service comply with the requirement of Section 10 of Article XV, and do not conflict with any other provisions of the constitution, they are valid and under the cases referred to discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not

only expected but the very purpose of the amendment was to permit such differences and make them effective.'"[1]

But from 1940 to 1944 a series of decisions were rendered casting doubt upon the efficacy of the broad scope of power conferred upon municipalities under the *Edwards case*. In *State, ex rel. Mowrer*, v. *Underwood* (1940), 137 Ohio St., 1, 27 N. E. (2d), 773, it was held that the protection and preservation of public health was of state-wide concern and that the state by legislative enactment could withdraw from municipalities health powers previously granted and transfer such powers to newly created health districts to be governed by state, not municipal law. The petition sought to compel the city civil service commission to comply with the civil service provisions of the city charter whereas the statute exempted employees of the health district from civil service. The courts held the statute prevailed.

In *In re Fortune* (1941), 138 Ohio St., 385, 35 N. E. (2d), 442, the court extended the principle of the *Underwood case* to include police regulations. In referring to the *Edwards case,* the court said:

"* * * It must be conceded, however, that the General Assembly has some control of civil service within cities by reason of Section 10, Article XV * * *.

"Pursuant to this authority, the General Assembly passed Section 486-17*a*, General Code, which governs the right to appeal from the civil service commission to the Court of Common Pleas by a member of a police department upon his removal. Even though we concede that in some instances civil service is a matter of local concern, the state possesses power to legislate in regard to such service, when it is brought into play in connection with some matter of state-wide concern. * * *

"By a series of decisions culminating in *City of Cincinnati* v. *Gamble* * * * [(1941), 138 Ohio St., 220], this court has

---

[1]In *Ferguson* v. *Collins*, 16 Ohio Law Abs., 6, the Court of Appeals of the Sixth District held that the Toledo charter provision with respect to disciplinary proceedings covering a policeman or fireman rather than Section 486-17*a*, General Code, governed. Appeal dismissed, 127 Ohio St., 419, but probably overruled by *In re Fortune*, 138 Ohio St., 385.

definitely established the rule that matters pertaining to police protection are of state-wide concern and under the control of state sovereignty. It follows that the civil service as applied to the police department of a city is subject to state regulation and the statute must prevail."[2]

In *Cincinnati* v. *Gamble* (1941), 138 Ohio St., 220, 34 N. E. (2d), 226, the court held that in general, matters relating to police and fire protection are of state-wide concern and under the control of state sovereignty, and therefore the state police and fireman law prevails over a municipal ordinance on the subject.

In *State, ex rel. Daly,* v. *Toledo* (1943), 142 Ohio St., 123, 50 N. E. (2d), 338, the court followed *Cincinnati* v. *Gamble* and held members of a municipal fire department entitled to the full protection and benefit of the state civil service laws and provisions of a municipal ordinance in conflict therewith invalid.

In *State, ex rel. Arey,* v. *Sherrill* (1943), 142 Ohio St., 574, 53 N. E. (2d), 501, the court held that a statute dealing with procedure incident to the discipline of a police officer governed and not the municipal administrative code enacted under the charter.

Respondent recognizes the above decisions but contends that the "judicial abrogation of the home rule amendments" subsequent to the *Edwards case* has apparently been halted, citing *Lapolla* v. *Davis* (1948), 55 Ohio Law Abs., 490 (appeal as of right dismissed, 151 Ohio St., 550); *Harsney* v. *Allen,* 160 Ohio St., 36, 113 N. E. (2d), 86, citing with approval *State, ex rel. Lentz,* v. *Edwards, supra* (90 Ohio St., 305), and *Lapolla* v. *Davis*; and *State, ex rel. Lynch,* v. *Cleveland* (1956), 164 Ohio St., 437, 132 N. E. (2d), 118. See, also, *State, ex rel.*

---

[2]See, also, *State, ex rel. Strain,* v. *Houston,* 138 Ohio St., 203, applying the doctrine to chief of a municipal fire department. In *Niehaus* v. *State, ex rel. Board of Education* (1924), 111 Ohio St., 47, the court held that a city could not thwart the operation of a state law with respect to building inspection for the erection of a public school building. In *State, ex rel. Ramey,* v. *Davis* (1929), 119 Ohio St., 596, 599, it was held that Article XVIII of the Constitution does not abridge the sovereignty of the state over municipalities in respect to its courts.

*Hackley,* v. *Edmonds,* 150 Ohio St., 203, 211-217, 80 N. E. (2d), 769.

In the *Lapolla case* a charter provision placing the position of a police chief in the unclassified service was held paramount to the statute providing otherwise. In the *Harsney case,* a charter provision authorizing the chief of police to have exclusive control of the stationing and transfer of all patrolmen was held valid. Although no specific conflict with a statute was presented, the court said in its opinion that ''the organization and regulation of its police force, as well as its civil service functions, are within a municipality's powers of local self-government,'' and as to civil service functions, referred to the *Edwards case, supra* (90 Ohio St., 305). The quoted language is not carried into the syllabus of the case. In the *Lynch case, supra* (164 Ohio St., 437), the second paragraph of the syllabus recites:

''Under those constitutional provisions a municipality is authorized to choose its own method of selecting its own chief of police other than from a civil service eligible list.''

The opinion quotes with approval from *Fitzgerald* v. *Cleveland* (1913), 88 Ohio St., 338, 103 N. E., 512, and the *Harsney case, supra* (160 Ohio St., 36).

We note that in his concurring opinion in the *Lynch case,* Judge Taft remarks that the *Lapolla case* is clearly irreconcilable with recent decisions of the court, particularly *State, ex rel.,* v. *Sherrill, supra* (142 Ohio St., 574).

We are inclined to repeat the further statement of Judge Taft as follows:

''It is regrettable that this court should neglect either to overrule, distinguish or even to notice its previous decisions and'pronouncements of law made so recently and which are so difficult to reconcile with the decisions rendered in the *Lapolla case* and in this case.''

We are inclined to the opinion that the *Lapolla, Harsney* and *Lynch cases* are irreconcilable with the *Sherrill* and other decisions of the court rendered from 1940 to 1944. Although perplexed over the failure of the Supreme Court to specifically overrule the *Sherrill* and similar cases, we are persuaded to

follow the more recent decisions and hold that in the instant case the charter provisions control.

The writ of mandamus is denied.

*Writ denied.*

DEEDS and HORNBECK, JJ., concur.

FESS and DEEDS, JJ., of the Sixth Appellate District, and HORNBECK, J., of the Second Appellate District, sitting by designation in the Tenth Appellate District.