Peck, J.
The important question presented by this appeal is whether a municipality which has not adopted a charter has authority under the home-rule amendment of the Constitution to adopt an ordinance prescribing a method of selecting a chief of police which is at variance with the general law. This question is squarely presented because one of the respondents was *299 qualified under a municipal ordinance to take the examination but was not so qualified under state statute. Specifically, ordinance No. 14 — 1958 only requires (so far as we are here concerned) that an applicant have at least five years experience as a member of a police department in order to qualify for the examination for chief of police, whereas Section 143.34, Revised Code, provides in part as follows:
“No positions above the rank of patrolman in the police department shall be filled by original appointment. Vacancies in positions above the rank of patrolman in a police department shall be filled by promotion from among persons holding positions in a rank lower than the position to be filled. No position above the rank of patrolman in a police department shall be filled by any person unless he has first passed a competitive promotional examination * # *.”
Clearly, the respondent Jones, who was not a member of the municipality’s police department, could not have qualified to take the examination if this statute has application, and it obviously is applicable unless it has been superseded by the ordinance.
It is the contention of the respondents that the statute does not apply because under the home-rule amendment of the Constitution the city has authority to adopt, by ordinance,* regulations concerning the personnel of its police department which are at variance with statutory law. This provision of the Constitution (Section 3, Article XVIII) reads as follows:
“Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.”
The respondents argue that this constitutional grant of authority is not limited in its application to charter cities, and that it applies with equal force to all municipalities in this state. With this contention we are in accord and, indeed, we have previously so held. The case of Village of Perrysburg v. *300 Ridgway, a Taxpayer, 108 Ohio St., 245, 140 N. E., 595, establishes the right of a municipality to exercise certain powers of home rule in the absence of a charter, but there the powers of home rule sought to be exercised were not at variance with the general law. However, although it is always of limited persuasion to seek guidance in a case which has decided part of the whole, the circumstances of the Perrysburg decision particularly cast doubt on the validity of arguing it as authority for an extension of its own doctrine. In that case, three of the judges of this court dissented, and two of the four judges concurring in the majority opinion joined in a concurring opinion specifically reserving “for future determination” the situation in which the municipal enactment and the general law might be at variance. Thus, far from being authority for the proposition that a noncharter municipality can adopt regulations at variance with general law, it is actually a case in which five of the seven members of the court either adopted a diametrically opposite position or explicitly emphasized the fact that they were not passing upon it. This limitation of the Perrysburg decision is pointed up in City of Cleveland v. Public Utilities Commission, 130 Ohio St., 503, 200 N. E., 765.
Ohio municipalities which have adopted charters have done so under Section 7, Article XVIII of the Constitution, which reads as follows:
“Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of Section 3 of this Article, exercise thereunder all powers of local self-government. ’ ’
It will be quickly noted that such section does not contain the limiting last phrase of the home-rule amendment (Section 3, Article XVIII), “as are not in conflict with general laws.” This omission has occasioned much judicial discussion, and, as has been recognized in such recent cases as State, ex rel. Lynch, v. City of Cleveland, 164 Ohio St., 437, 132 N. E. (2d), 118, and State, ex rel. Canada, v. Phillips, Dir., 168 Ohio St., 191, 151 N. E. (2d), 722, some lack of consistency has existed. As Weygandt, C. J., pointed out in the Lynch case, Sections 3 and 7 of Article XVIII “have been highly and often bitterly controversial even from the time they were first proposed.” The controversy con *301 cerns whether the last phrase just quoted (“as are not in conflict with general laws”) modifies all that has gone before it in Section 3, or only the portion dealing with the adoption and enforcement within the municipality’s limits of “local police, sanitary and other similar regulations.” It is argued that the modifying phrase applies not to this portion alone but to the opening phrase (dealing with “all powers of local self-government”) as well because the framers of the Constitution knowingly refused to separate the phrases designating the two classifications of functions by a comma (2 Ohio Constitutional Convention, Proceedings and Debates [1912], 1860 to 1861). While the insertion of the comma would have been proof positive of an intent to have the modifier apply to the second phrase only, the converse does not necessarily follow, and this court has chosen to read the section as it would have had a comma been inserted after the word, “self-government.” This is the clear effect of the Lynch and Canada cases, supra.
Indeed, any other interpretation of Section 3 would render the adoption of Section 7 senseless, because its grant of authority for municipal charter operation is specifically “subject to the provisions of Section 3.” If full home-rule authority were intended to have been created by Section 3, the adoption of Section 7 could only be considered as a vain and superfluous act. Such a conclusion would be completely lacking in justification, and was expressly denied in the Canada case, supra, paragraph four of the syllabus of which reads as follows:
“4. The words ‘as are not in conflict with general laws’ found in Section 3 of Article XVIII of the Constitution, modify the words ‘local police, sanitary and other similar regulations’ but do not modify the words ‘powers of local self-government. ’ ”
The respondents cite a number of decisions of this court as authority for their position, but, with the exception of the Perrysburg case, all the cases relied upon by them were concerned with charter municipalities and thus presented a different problem. Those cases include State, ex rel. Lentz et al., Civil Service Commission, v. Edwards, 90 Ohio St., 305, 107 N. E., 768; State, ex rel. Lawler, v. City of Toledo, 130 Ohio St., 171, 198 N. E., 39 (51 Ohio App., 329, 1 N. E. [2d], 171); City of *302 Cincinnati v. Gamble et al., Board of Trustees, 138 Ohio St., 220, 34 N. E. (2d), 226; State, ex rel. Arey, v. Sherrill, City Mgr., 142 Ohio St., 574, 53 N. E. (2d), 501; and State, ex rel. Canada, v. Phillips, supra.
It is conceded by the relators that the city of North College Hill could have provided for the selection of its police chief in the manner here attempted if it had been a charter city and had the subject ordinance been authorized by such charter. Such action would have been squarely within the decisions in the Lynch and Canada cases, supra. However, in the absence of a charter, the court reached the opposite conclusion.
The case of Morris v. Roseman, 162 Ohio St., 447, 123 N. E. (2d), 419, involved the validity of an emergency zoning ordinance, adopted by a noncharter municipality, which was at variance with the provisions of a general law requiring the holding of a public hearing and the giving of notice of the time and place of the hearing on proposed zoning ordinances. In that case, the court said:
“In the case of Village of Perrysburg v. Ridgway, a Taxpayer, 108 Ohio St., 245, 140 N. E., 595, it was held that such section [Section 3, Article XVIII, Constitution] is self-executing, and that the power of local self-government is inherent in all municipalities regardless of enabling legislation and the existence of municipal charters.
i 6 * * *
“But how and in what manner is such power to be exercised?
“The Constitution of Ohio provides two ways. By Section 2, Article XVIII, a mandatory duty is placed upon the General Assembly to enact laws for the incorporation and government of cities and villages, and Section 7, Article XVIII, grants a municipality the option of determining its own plan of local self-government by framing and adopting a charter. If a municipality adopts a charter it thereby and thereunder has the power to enact and enforce ordinances relating to local affairs, but, if it does not, its organisation and operation are regulated by the statutory provisions covering the subject.'” (Emphasis supplied.)
Section 3 confers upon all municipalities “authority to ex *303 ercise all powers of local self-government” but, as pointed ont in Morris v. Roseman, supra, does not state “how and in what manner” such powers are to be exercised. Section 2 specifically authorizes “general laws * * * to provide for the * * * government of” municipalities. It is apparent therefore that, by what they said, the people expressed an intention that, in the absence of the adoption of a charter pursuant to Section 7 or of the adoption of any “additional laws * * * for the government of municipalities adopting the same” pursuant to Section 2, the “general laws * * * for the * * * government of” municipalities authorized by Section 2 were to control a municipality in the exercise of the powers of local self-government conferred upon it by Section 3. Where a charter is adopted, then, under Section 7, the municipality “may, subject to the provisions [i. e., limitations] of Section 3 [not Sections 2 and 3] * * * exercise thereunder [i. e., under the charter instead of under general laws] all powers of local self-government.” The only limiting provision then applicable is that specified in Section 3, that “local police, sanitary and other similar regulations” shall “not * * * conflict with general laws.” (Paragraph four of syllabus of State, ex rel. Canada, v. Phillips, supra.)
This court has thus clearly recognized the distinction between the powers of charter and noncharter municipalities. Clear evidence of the intention that such a distinction should exist is found in the very fact that the two provisions of the Constitution hereinabove cited were adopted as separate sections; if an identical extent of authority had been intended to have been conferred, a single section would have abundantly sufficed. By these two sections, the Constitution confers upon charter cities and villages some greater degree of power not here required to be defined but limits the general area of non-charter municipal authority. There is in the present case a direct variance between the statute permitting only members of a police department to take an examination of the type here under consideration and the ordinance which contains no such limitation, and it is our conclusion that such variance renders the ordinance invalid. Differently stated, a noncharter municipality is without authority under the provisions of Section 3, *304 Article XVIII of the Constitution, to prescribe less restrictive qualifications for civil-service-examination applicants than are prescribed by statute, since such municipal action would be at variance with the general law.
It is contended further that the examination given by the respondent civil service commissioners, having been partly written and partly oral, was in conflict with Section 143.16, Revised Code, which provides for written examinations only. Having grounded our conclusion herein on the variance concerning the qualifications of applicants, we deem it unnecessary to consider the additional point, but see State, ex rel. Ethell, v. Hendricks, 165 Ohio St., 217, 135 N. E. (2d), 362.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Taet, Matthias, Bell and Herbert, JJ., concur.

Repeated emphasis is placed by relators on the fact that the ordinance was passed as an emergency measure and was thus not one on which referendum was available. For purposes of this decision we attach no significance to that feature of the ordinance.